Gilbert **GOMEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 43992.

Court of Criminal Appeals of Texas.

Sept. 23, 1971.

Herrington, Levbarg, Weeks & Jones by T. Allen Herrington, Austin, for appellant.

Robert O. Smith, Dist. Atty., Lawrence Wells, and Harold Jaquet, Asst. Dist. Attys., Austin, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for possession of heroin enhanced under the provisions of Art. 63, Vernon's Ann.P.C.; trial was before a jury and the court assessed the mandatory punishment of life.

Captain Harvey E. Gann of the Austin Police Department testified that on May 1, 1969, he observed the appellant riding in an automobile with two other persons on First Street and Willow Street in Austin. He and other officers stopped the vehicle at the intersection of First and Clara Streets. Other occupants of the vehicle were Gloria Olivio and Seferino Torres. The appellant and Torres and the purse of Olivio were searched on the scene. All three, plus the automobile, were taken to the police station, whereupon the car was searched. He further testified that Sgt. Taylor recovered a package from the vehicle.

Sgt. W. J. Taylor testified that on the morning in question he observed the appellant, Olivio, and Gomez, come out of a house at 2002 Holly Street, get in the automobile, and leave. He followed the vehicle to the intersection of First and Clara Streets, where it had been stopped by Captain Gann and Sgt. Hersom. He further testified that upon searching the vehicle at the police station, he found three small packages which were introduced as State's Exhibits 1, 2, and 3.

A chemist for the Department of Public Safety testified that all three packages contained heroin.

Sgt. Hersom was also present when the appellant was apprehended. He testified that he observed the appellant at the police station and that the appellant had infected needle marks on his left arm, which was common among heroin addicts.

The appellant contends that the heroin was inadmissible as the fruit of an unlawful search. First, he complains that there was no probable cause for the search. A hearing on this issue was held outside the presence of the jury. No search warrant or arrest warrant was issued. On the morning before the appellant's arrest, Gann received a call from an unidentified informant to meet the informant in the 2000 block of East First Street. The informant told Gann that Torres and the appellant were preparing heroin for distribution at 2002 Holly Street. Gann had known the informant for a long period of time and the informant was proven to be reliable and his information had always been credible. Gann also testified as follows:

"Q  Officer, state the conversation with the informant, as fully as you can recall it, sir.

"A  He stated that Seferino and Gilbert were at 2002 Holly, and they were preparing heroin; a large shipment had come in, that they were preparing it and would be leaving there to distribute it to pushers that were working for them; said they should be leaving there within just a few minutes.

"Q . Did he say how they would be leaving there?

"A  In Seferino's car.

"Q  Did he describe the car?

"A  We knew the car, a '60 Pontiac, blue and white."

The informant described the automobile with particularity, knew where the

appellant and his companion would be, was himself only a few blocks from the vicinity. Thus, "There would appear to be some indication that the informer spoke with personal knowledge or had gained his information in a reliable way." Almendarez v. State, Tex.Cr.App., 460 S.W.2d 921. At the point of interception every fact related by the informer except the presence of the heroin was verified. Captain Gann had received previous reliable information from the informant and "there was therefore underlying circumstances as to the officer's conclusion that the informer was credible and his information reliable." Almendarez v. State, supra. A very similar fact situation existed in Almendarez, and this Court held that Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, was applicable. Under Almendarez and Draper, there was probable cause for the search.

The appellant also complains that the search of the automobile was illegal because the search was conducted without a warrant at the police station later, and not immediately at the site of the arrest. Gann's testimony relevant to this matter was as follows:

"Q  Now, Officer, when you got to the police station, what did you do?

"A  Sgt. Hersom took Gloria Olivio upstairs, and Sgt. Taylor and myself remained and conducted the search of the vehicle, of the '60 Pontiac.

"Q  Now, Officer, why was it necessary to continue the search down at the police station?

\*      \*      \*      \*      \*      \*

"A  It was impossible to conduct a search there at that location due to the crowd and the circumstances. We felt we were blocking traffic, and the crowd that had gathered there, it seemed imperative that we continue the search at some place where we might be sure we had not missed anyone or anything."

"The relevant test, in cases like that at bar, is whether the search was reasonable under all of the circumstances, for it is only unreasonable searches that are prohibited by the Fourth Amendment." Taylor v. State, Tex.Cr.App., 421 S.W.2d 403. A search is not unreasonable if the automobile is searched at another place if the subsequent search is a part of a series of events constituting one continuous happening. Taylor v. State, supra.

In United States v. Evans, 385 F.2d 824 (7th Cir.), there was a search incident to a lawful arrest. The court held that it was reasonable to move the vehicle to another location to be searched in view of the fact that a large crowd had gathered at the scene.

The search was reasonable and proper.

The appellant's first ground of error is overruled.

The appellant's second ground of error complains of Hersom's testimony that the appellant's left arm bore infected needle tracks. He stated that such tracks indicated that there had been numerous needle injections at that locality of the appellant's arm. He also testified that such needle marks are caused when heroin is injected into the arm with a syringe, and he went on to describe various types of syringes and the method of mixing heroin and injecting it into the vein. Hersom testified that he had been a police officer for 12 years and had been on the narcotics squad for three years and had observed the arms of hundreds of heroin addicts.

The physical condition of the appellant at the time of the offense is material, even though it may associate the appellant with an illegal drug. Williams v. State, Tex. Cr.App., 464 S.W.2d 842. And a qualified officer may state that he observed punctures in the defendant's arm, which, in his opinion would come from injecting needles in his arm. Feather v. State, 169 Tex.Cr.R. 334, 333 S.W.2d 851; Corpus v. State, Tex.

Cr.App., 463 S.W.2d 4. Since the presence of the needle marks is relevant, and testimony that they came from injecting needles into the arm is relevant, it follows that a description of the syringe would also be relevant as would the manner in which the heroin was injected by using the syringe.

The appellant's second ground of error is overruled.

There being no reversible error, the judgment is affirmed.