**Earl Elmer WHITE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47507.**

Court of Criminal Appeals of Texas.

July 2, 1974.

Rehearing Denied April 2, 1975.

Second Rehearing Denied April 23, 1975.

**256**

Jim B. Brown, Canyon, for appellant.

Tom Curtis, Dist. Atty., Gene Storrs, Asst. Dist. Atty., Amarillo, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

Appeal is from a conviction in a trial before a jury of knowingly attempting to pass as true a forged instrument in writing. Punishment was assessed at five years.

Appellant was arrested at approximately 1:30 P.M., June 28, 1972, at Teller Drive-up Window No. 7 of the First National Bank of Amarillo. The arrest was made on the basis of information from the American National Bank of Amarillo received by Officer Jimmy Stevens at about 1:20 P.M. that appellant had attempted to pass four checks there and on information received by Officer Crowell from the First National Bank that appellant was in the act of attempting to pass certain checks at one of the drive-in windows at that bank. The car which appellant drove was described to Officer Stevens as a blue 1966 Lincoln Continental. Crowell and Stevens proceeded to the First National Bank, where they found appellant in his car at the No. 7 drive-up teller's window. He had already handed the teller four checks and a deposit slip with a request for a portion of the amount in cash, and the teller was waiting for the police before acting upon the tender of deposit. The officers obtained from the teller the checks and deposit slip appellant had attempted to pass and ordered appellant to drive across the street and park at the curb. While he was doing so, an official of the bank and Officer Crowell observed him making a hand movement toward the glove compartment, and then toward the seat as though attempting to "stuff" something between the seats. Appellant was ordered out of the car and was taken by Officer Stevens in the police car to the police station, about seven blocks distance. Crowell drove appellant's car to the station and parked it in the driveway, and gave Stevens the car keys. While in the car, Crowell did not see or look for any checks.

At the station, Stevens talked to appellant for 30 or 45 minutes, and attempted to get his consent for a search of the car. Appellant refused to give such consent. Thereupon, Stevens and Crowell, without obtaining a search warrant, made a search of appellant's car. They found four wrinkled checks of the same nature as those received by them from the First National Bank teller stuffed between the fold-down console and the front seat of the car.

These checks were admitted in evidence over appellant's objection.

Appellant initially makes the contention that the officers violated his rights under the Fourth Amendment in searching his car without first obtaining a search warrant.

Since appellant was engaged in the act of committing a felony in the presence of the officers when they apprehended him, their right to arrest him is not being questioned. The right of the officers to search his car after appellant had, at their instructions, driven it across the street and before it was moved to the police station is not before us, since the officers did not make a search at that time. Officer Crowell testified that he saw no incriminating papers in the car while he was moving it to the police station.

At the time the search was made appellant was in custody at the police station. Therefore, the search was not incident to the arrest. Stoddard v. State, Tex.Cr. App., 475 S.W.2d 744, 749, citing Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

"[T]he reasons that have been thought sufficient to justify warrantless searches carried out in connection with an arrest no longer obtained when the accused is safely in custody at the station house." Chambers v. Maroney, supra.

In Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the Supreme Court construed Preston v. United States, supra, as holding that "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest," and limited its holding "for the proposition that the search challenged there could not be justified as one incident to an arrest."

In Harris v. State, Tex.Cr.App., 486 S. W.2d 88, we cited Chambers v. Maroney, supra, as holding that "for constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

However, the officers on arresting the appellant did not search the car immediately on arresting appellant. They took him to the police station, and tried for between 30 and 40 minutes to secure his consent to search his car. He refused to give such consent. Evidently, at that time they were in doubt as to their legal right to make a search without a warrant. Having the appellant in custody, and having the keys to his car, which at that time was in the station breezeway, the exigencies required for a warrantless search of the car were not present. The officers made no attempt to give any reason for failing to get a warrant. The time was around two o'clock in the afternoon, in the city of Amarillo, and there is no showing that a magistrate was not readily available. There is no evidence that, although a car is movable, there was any prospect of it being taken from the station by anyone. The arrest was not made out on a lonely country road around midnight, where the search might have been dangerous to the officers, as the Supreme Court noted was in the case in Chambers v. Maroney, supra.

The Supreme Court recognizes that one of the established exceptions to the warrant requirements is the search of an automobile on the highway where there is probable cause to support the search, and where it is not practical to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; Chambers v. Maroney, supra. These authorities support the proposition

that the burden is on the State to show that the exigencies of the situation make a search without a warrant imperative. But the search of appellant's car cannot be sustained under the automobile exception, for there is no showing in the evidence of any reasonable likelihood that the automobile would be moved.

We quote as follows from Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744:

"The general rule is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, *accord* Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). 'Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search.' Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981 (1970). The mere fact that probable cause exists will not obviate the necessity for procuring a warrant, unless the search falls within one of the exceptions to the general rule. 'Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity . . . .' Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed.2d 436 (1948). 'Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.' Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145 (1925); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 2030, 29 L.Ed.2d 564 (1971).

"Therefore, even if the officers had probable cause to believe that marihuana was concealed in appellant's automobile, that fact, standing alone, would not justify a warrantless search.' . . .'"

In *Stoddard*, the Court held that "The test is whether 'exigent circumstances' makes the obtaining of a warrant impracticable. In the instant case no showing is made as to why the obtaining of a warrant was not practicable. . . ." The judgment was reserved.

In the absence of the "exigent circumstances" which are necessary to justify a warrantless search, we find no justification for a search without a warrant. The four checks seized in the search were unlawfully obtained, and should not have been admitted. Stoddard v. State, supra.

These checks, which were proved to be forged, were before the jury for their consideration at both the guilt and the punishment stage. After finding appellant guilty of attempting to pass a similar forged check, the jury assessed the maximum penalty. Art. 996, Vernon's Ann.P.C. We do not find beyond a reasonable doubt that the error is harmless.

The judgment is reversed, and the cause is remanded.

Opinion approved by the Court.

## ON STATE'S MOTION FOR REHEARING

MORRISON, Judge (dissenting).

At the time this case was first submitted on rehearing, Judge Jackson, then a Commissioner with this Court, prepared an opinion which I now adopt as my dissent.

"We have concluded that the search of appellant's automobile at the police station was legal, and the evidence thus obtained was admissible.

It is conceded that appellant's arrest was legal and that probable cause existed for

the search incident to that arrest at that time, but it is contended that the removal of the automobile to the police station and the warrantless search some 30 to 50 minutes later was not proper.

The record shows that the felony committed in the officer's presence was at a drive-in window of a bank on a busy street, and that. it was not practical to search there. It was more consistent with the safety and convenience of the appellant, his automobile, and the officers to remove the car to the police station to complete the search incident to the arrest.

The fact that in the meantime the officers sought to obtain consent from appellant for the search, which was refused, in no way militated against the right to search, and was reasonable under the circumstances.

The entire series of events culminating in the recovery of additional forged checks from appellant's automobile was one continuous transaction. As was said in Taylor v. State [Tex.Cr.App.], 421 S.W.2d 403, cert. denied, 393 U.S. 916, 89 S.Ct. 241, 21 L.Ed.2d 201, opinion on appellant's motion for rehearing, 'the removal of this automobile to Marshall, and the subsequent search were a series of events constituting one continuous happening.'

We have also approved later warrantless searches under similar facts in Lara v. State [Tex.Cr.App.], 469 S.W.2d 177, on appellant's motion for rehearing; and in Gomez v. State [Tex.Cr.App.], 470 S.W.2d 871. These holdings are in accord with Chambers v. Maroney, 399 U.S. 42, 90 S. Ct., 1975, 26 L.Ed.2d 419, . . .

We have considered the additional grounds of error presented by appellant and find them to be without merit.

The State's Motion for Rehearing is granted and the judgment is affirmed.

JACKSON, Commissioner"

I dissent.

DOUGLAS, Judge (dissenting).

The majority overrules the State's motion for rehearing without written opinion.[1]

The majority still does not apply Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, which is the constitutional law of the United States. The State is being denied due process of law. A state has constitutional rights. See State of California v. Green, 399 U.S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970).

The majority is not following previously decided cases by this Court. Gomez v. State, Tex.Cr.App., 470 S.W.2d 871, written by one of the majority in this case, upheld a search of a car at the police station after a search was made at the time of arrest. The arrest was made upon information given by an informant who stated that Gomez and Torres were preparing heroin for distribution and that the two would be leaving in a " '60 Pontiac, blue and white."

In the Gomez case, it is written:

"The appellant also complains that the search of the automobile was illegal because the search was conducted without a warrant at the police station later, and not immediately at the site of the arrest. Gann's testimony relevant to this matter was as follows:

" 'Q. Now, Officer, when you got to the police station, what did you do?

" 'A. Sgt. Hersom took Gloria Olivio upstairs, and Sgt. Taylor and myself remained and conducted the search of the vehicle, of the '60 Pontiac.

" 'Q. Now, officer, why was it necessary to continue the search down at the police station?

" '*  *  *

" 'A. It was impossible to conduct a search there at that location due

1. The dissenting opinion on the original submission is withdrawn.

to the crowd and the circumstances. We felt we were blocking traffic, and the crowd that had gathered there, it seemed imperative that we continue the search at some place where we might be sure we had not missed anyone or anything.'

" 'The relevant test, in cases like that at bar, is whether the search was reasonable under all of the circumstances, for it is only unreasonable searches that are prohibited by the Fourth Amendment.' Taylor v. State, Tex.Cr.App., 421 S.W.2d 403. *A search is not unreasonable if the automobile is searched at another place if the subsequent search is a part of a series of events constituting one continuous happening.* Taylor v. State, supra." (Emphasis supplied)

In the Taylor case, supra, this Court upheld the search of an automobile after a traffic arrest. The arrest was for a traffic violation at Waskom, some eight miles from the courthouse at Marshall. Probable cause was shown to search the car. An officer took the keys from Taylor. The officer searched the trunk of the car without a warrant after they reached the magistrate's office at the courthouse. He found marihuana in a coffee can. This Court held that search was legal and the marihuana was admissible and wrote:

"[t]he removal of this automobile to Marshall, and the subsequent search were a series of events constituting one continuous happening."

and,

"As pointed out by the Supreme Court in Cooper v. State of California [386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730], and in Preston v. United States [376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777], the question there decided was not whether the search was authorized by state law, but whether the search was reasonable under the Fourth Amendment. Both opinions make it clear that whether a search is reasonable depends upon the facts and circumstances of each case."

In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, it is written:

"It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 94 L.Ed. 653, 660."

In Brown v. State, 475 S.W.2d 938, this Court upheld the search of the trunk of an automobile that Brown had been driving which was made in his absence without a warrant some twelve hours after officers received information of the crime of murder.

We will look at the ·facts to see if the officers had probable cause to search the automobile. The majority does not question the right to arrest. Appellant was arrested in his car at the First National Bank in Amarillo where he had attempted to pass as true four forged checks with a deposit slip listing the checks. Had he been successful in passing these checks he would have collected $279 cash. He did not have an account at the bank.

Arlain Miller testified that she worked at the American National Bank in Amarillo. Appellant had four out-of-town checks listed on a deposit slip. He had no account at that bank under his name and there was no account number as he had listed on the deposit slip. She kept a copy of the deposit slip and returned two copies and the checks to appellant.

Maxine Bayless testified that she was a teller at the American National Bank and that appellant had on the deposit slip the four checks and the total amount less cash but he had no account in the bank.

Joyce Cross, a teller at the American National Bank, testified that appellant tried to make a deposit of checks but there

was no account in that name or number. There were four out-of-town checks to be deposited and he wanted back $279 in cash. She called Marvin Keith Herring, a security officer at the First National Bank, and the Amarillo Police Department, and "I told them that we had a man there attempting to deposit some checks; that we had made a routine check and we did not have an account in the name that he was trying to deposit the checks in or the number."

Detective Jimmy Stephens of the Amarillo Police Department testified that he received a call from Herring who related that he had received a call from a Mrs. Cross from another bank that a fellow tried to pass some checks and that he was now at the drive-up window.

After arriving at the bank, officers had appellant move his car from the drive-up window. Herring, the assistant cashier of the First National Bank, saw appellant make a motion from the glove compartment to the area of the front seat divider. He saw wrinkled or crumpled papers in the fold of the seat.

Detective Crowell who was at the bank at the time of the arrest testified that Herring told him about seeing movements of appellant's hand from the glove compartment to the seat. Crowell advised Herring that he saw it also and later told Detective Stephens about it. Crowell drove appellant's car some six or seven blocks to the police station.

The car was searched at the police station approximately forty to fifty minutes after the arrest and the other checks complained to be the result of an illegal search were found.

Officer Crowell testified that he did not know how many checks were supposedly passed. He testified that appellant was taken out of his car when it was verified there was "no such account and no such number."

The following occurred:

"Q. (Prosecutor) Did you have authority to impound the car?

"A. Yes, sir, we did.

"Q. And the normal procedure is for you to search the car before you impound it?

"A. Yes, sir; we are required to take the person out of the car; that *we are responsible for the car and its contents; therefore, we search the vehicle for any valuables.* (Emphasis supplied)

"Q. What do you do with the valuables?

"A. We book them in.

" * * *

"Q. Who gave you authority to impound the car?

"A. No, sir, we impounded it due to the fact that we took him out of the car during the arrest."

Detective Jimmy Stephens testified that when the officers arrived at the First National Bank they saw the appellant in a '66 Continental four-door blue hard top. This matched the description he got from the American National Bank. While at that bank, Stephens obtained from the teller the deposit slips and the checks that appellant attempted to pass.

Stephens testified that he advised appellant of his rights. Then the following occurred:

"Q. (Prosecutor) Was it also normal detective procedure to ask a suspect like that when you think a search might be in order, to ask the suspect if he wants to consent to the search?

"A. Yes, I sure did.

" * * *

"Q. And did he consent or not?

"A. No, sir, he refused."

After this, Stephens and Crowell searched the car. Stephens found four checks folded and stuffed "between the fold down console and the seat itself."

On cross-examination Stephens was asked what he was looking for when he conducted the search. He stated:

> "Well, we had known that he had attempted to pass checks at the American National, and we had recovered the checks from the First National, the First National Drive-up Window.

> "And I felt as though there would be possibly other checks from the American National. . . .

> " * * *

> "And he had presented the American National deposit slip at the American National. This is what I was looking for.

> " * * *

> "Yes, sir, I had reason to believe that there were American National deposit slips in there."

Stephens, when asked if he had to look around to find the checks, stated: "I had to look inside the car. I saw them. * * * When I stuck my head in the car I saw them." And, "Well, I saw what appeared to be checks to me and then I reached down and got them."

On cross-examination he was asked, "So you were just looking for anything that you might run across in the car?" He answered, "I guess just a general search." On redirect he testified, "I felt as though he probably would have had to have an American deposit slip to make the deposit. I think that is standard procedure at banks. They said he already had the deposit made up. It was already made up." Stephens also testified that he found the checks where Detective Crowell indicated he had seen appellant appear to be placing something in the area to the right of where he was sitting.

Appellant's counsel in making his objection asked the trial judge if she was aware of the case of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. He then stated that the search in that case was reasonable because officers had a report that a robbery had been committed and that the car was stopped at night. He pointed out that in the present case the facts were different because the arrest was made in the daytime and the car was not purported to be occupied by robbers, and that Chambers v. Maroney was not applicable.

When the trial judge ordered the checks admitted into evidence she stated:

> "I will find there was probable cause for the arrest and probable cause for the search as well.[2]

> " * * *

> "Under the doctrine of Chambers v. Maroney, I will find that the fruits of the search, even though it was made at a later point at the police station, are admissible in evidence."

The trial judge has sufficient evidence and authority upon which to base her ruling.

This is like the Taylor case, supra. The officers took the forged checks from the bank. The possession of forged checks with intent to pass them is a felony. The officers had probable cause and the offi-

---

2. Even the employees at either bank had the right to arrest appellant under the facts of this case. Article 14.01, Vernon's Ann.C.C.P., provides:

"(a) A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

"(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

cers had appellant move his car from the teller's window "to clear the driveway."

This cause is being reversed upon the grounds that Chambers, supra, is not applicable.

Recently, Justice Powell, speaking for the Supreme Court of the United States, in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), wrote:

"Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, Beck v. Ohio, *supra*, 379 U.S. at 96, 85 S.Ct., at 228 [379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142]; Wong Sun v. United States, 371 U.S. 471, 479–482, 83 S.Ct. 407, 412–414, 9 L.Ed.2d 441 (1963), it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948)."

There was probable cause in the present case but no search warrant for the car was obtained. The present case is stronger in favor of the search than Taylor v. State, supra, but the majority does not even distinguish the two.

The passing of Taylor and Gomez should be noted by the majority and their interment should be conducted with more dignity.

There is no legal or logical reason to hold that a search could not be made at the police station a short time after the arrest when a search could have been made at the bank.

The exclusionary rule which, in part, prohibits the introduction of evidence ob-

tained in a search because an officer makes a mistake has nothing to do with an accused's guilt or innocence. The rule does not punish the officer, it only hurts the law-abiding public when a guilty person goes free because an officer makes an honest mistake. We should not extend the exclusionary rule where it is not required by the Supreme Court of the United States or other constituted authority. Some acceptable substitute for such a rule should be considered by the Supreme Court of the United States and the Legislature of Texas. See Wright, Must The Criminal Go Free If The Constable Blunders, Tex.L. Rev., Volume 50, Page 736 (1971); American Criminal Law Review, The Fourth Amendment Exclusionary Rule: Past, Present, No Future, Volume 13, Page 507 (1975). Even though the Supreme Court, in my opinion, does not require the exclusion of the checks in question from evidence, this Court holds the exclusionary rule applies and reverses the conviction.

Decisions such as the one in this cause should cause a reappraisal of the rule.

Chambers v. Maroney is still alive, except in Texas. It should be followed and the judgment affirmed.