

NUMBER 13-12-00233-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RODOLFO RODRIGUEZ,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

## On appeal from the 103rd District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Perkes**
**Memorandum Opinion by Justice Benavides**

Appellant, Rodolfo Rodriguez, entered a plea of "no contest" to an indictment of

possession of a controlled substance, namely cocaine, in an amount of 400 grams or

more.[1]  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(f) (West, Westlaw through

---

[1]  Although Rodriguez entered a plea agreement, the trial court certified his right to appeal.  *See*

2013 3d C.S.).  The trial court sentenced Rodriguez to fifteen years' confinement.  By one issue, Rodriguez contends the trial court erred in denying his motion to suppress, thus admitting the evidence of narcotics found during a warrantless search of Rodriguez's vehicle.  We affirm.

## I.  BACKGROUND

On August 8, 2011, Brownsville police officers and agents from the U.S. Department of Homeland Security—Immigration and Customs Enforcement (ICE) Division received information from a confidential informant that a possible drug transfer would occur in the K-Mart parking lot on Pablo Kisel Boulevard in Brownsville, Texas. According to Special Agent Jacob Moya, who works with the ICE High Intensity Drug Trafficking Area task force, this informant had provided reliable information in the past. The informant advised that the transaction would involve a red Ford pickup truck with Mexican license plates.  At the last minute, however, the informant advised that the transfer would instead occur at the Gold's Gym parking lot, located approximately a block and a half away further down Pablo Kisel Boulevard.

Officers quickly set up surveillance at the new location.  The suspect vehicle, the red Ford pickup truck, drove into the parking lot.  Over the radio, Brownsville Police Officer Robert Nieto heard that a transfer occurred from the red pickup to a silver Chevrolet Monte Carlo.  Officer Nieto thought Special Agent Moya reported this transfer, but he was not sure.  Special Agent Moya, however, testified that another agent reported this event.  Officer Nieto followed the silver Monte Carlo.[2]  He reported that the driver, Rodriguez, "was very nervous.  He was looking around, kept looking in

TEX. R. APP. P. 25.2(a)(2)(b).
[2] Other officers followed the red Ford pickup truck.

2

his rearview mirror, just looking right and left." Officer Nieto followed Rodriguez to a Stripes convenience store, where Rodriguez parked at the gas pumps. Officer Nieto saw Rodriguez "walk into the store, very nervous, looking around everywhere." Rodriguez did not purchase anything, "just kept looking out," and then went back to his vehicle. He moved the car to the west side of the store and went back into the convenience store. According to Officer Nieto, Rodriguez came out of the store again, walked toward his car, and then walked away from the car toward the gas pumps. At that point, Officer Nieto asked for a unit to make contact with Rodriguez. When an officer called out to him, Rodriguez began running. Officers yelled, "Stop! Police!", but Rodriguez kept running across FM 802, a busy thoroughfare. He was apprehended nearly a block away, placed into custody, and driven back to the gas station by officers.

At the gas station, Officer Nieto asked Officer David Schaelchlin of the Brownsville Police Department K-9 unit to secure Rodriguez's vehicle. Officer Nieto then asked Rodriguez for consent to search his vehicle. Rodriguez agreed, but when Officer Nieto asked him to sign a written consent form, Rodriguez replied, "I'm not signing anything." Officer Nieto testified that he thought Rodriguez may have rescinded his consent by refusing to sign the form. At that point, Officer Schaelchlin then returned to Officer Nieto and reported that his canine had alerted that narcotics were present in Rodriguez's vehicle. Because Officer Nieto knew that a transfer of some sort had occurred, he had the vehicle towed to the Brownsville Police Department.

At the department, Officer Nieto contacted the Cameron County District Attorney's office. He explained that Rodriguez had consented to the search but refused to sign the consent form, and he asked whether he needed to request a search warrant to search

the vehicle.   Officer Nieto testified that the D.A.'s office told him that he could proceed without a warrant.   He then asked Officer Schaelchlin to conduct the search.   Officer Schaelchlin found sixteen bundles of cocaine weighing approximately 42.66 pounds in the backseat compartment along the driver's side panel.   Rodriguez was arrested.

Prior to trial, Rodriguez filed a motion to suppress arguing that the warrantless vehicle search was unconstitutional.   He argued that he rescinded his consent to search when he refused to sign the written consent form.   The trial court denied this motion and filed findings of facts and conclusions of law to support its decision.   The relevant conclusions of law follow:

1.  The Confidential Informant was reliable and the information provided regarding the August 8, 2011 narcotics transaction was corroborated by the agents.

2.  The corroborated information obtained from the Confidential Informant, the transfer of contraband from the red single cab Ford truck to the silver Monte Carlo observed by the agents, combined with the defendant's suspicious demeanor, his evading detention, his abandonment of the vehicle, and the alert by the canine provided agents with ample probable cause to perform a warrantless search of the silver Monte Carlo.

3.  The defendant voluntarily, intelligently, and unequivocally gave verbal consent for agents to search his silver Monte Carlo.

4.  The defendant did not request or limit the consent to search to exclude any areas of the silver Monte Carlo.

5.  The defendant did not withdraw nor limit consent to search the vehicle when he refused to sign a written consent to search form.

6.  The warrantless search and seizure of the sixteen (16) bundles of cocaine were performed with probable cause and with the defendant's voluntary, intelligent, and unequivocal verbal consent.

(Internal citations omitted).   Rodriguez pleaded no contest to the charge of possession of a controlled substance, namely cocaine, in an amount of 400 grams or more, and the

trial court sentenced him to fifteen years' confinement in the Texas Department of Criminal Justice—Institutional Division. This appeal ensued.

## II. STANDARD OF REVIEW

We review motions to suppress evidence on a bifurcated standard of review. *See Guevara v. State*, 97 S.W.3d 579, 582 (Tex. Crim. App. 2003). We give almost total deference to a trial court's determination of historical facts, as it is the sole trier of fact and the sole judge of credibility of the witnesses and the weight to be given their testimony. *Id.*; *see also Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). However, we review de novo the court's application of constitutional search and seizure law to the facts of the case. *Guevara,* 97 S.W.3d at 582. A trial court's denial of a motion to suppress is reviewed for an abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985). "In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). "When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *Id.*

## III. ANALYSIS

By his sole issue, Rodriguez contends the trial court erred in denying his motion to suppress and admitting the discovery of nearly 43 pounds of cocaine into evidence. First, Rodriguez contends that there was no probable cause to search his vehicle. Second, Rodriguez argues that he revoked his consent when he refused to sign the written consent-to-search form.

The Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. CONST., amend. IV. State and federal constitutional law, however, recognize an "automobile exception" to the Fourth Amendment: if there is probable cause that a vehicle contains "contraband or the instrumentalities of a crime," it may be searched without a warrant. *See State v. Guzman*, 959 S.W.2d 631, 632–33 (Tex. Crim. App. 1998); *Chambers v. Maroney*, 399 U.S. 42, 48 (1970) (noting the difference between warrantless searches of vehicles as opposed to residential homes or business offices). In short, "'a vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search.'" *Guzman*, 959 S.W.2d at 634 (quoting *United States v. Johns*, 469 U.S. 478, 484 (1985)); *see Neal v. State*, 256 S.W.2d 264, 283 (Tex. 2008).

"Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005). Here, the trial court found that probable cause existed based on the following "reasonably trustworthy facts and circumstances":

> The corroborated information obtained from the Confidential Informant, the transfer of contraband from the red single cab Ford truck to the silver Monte Carlo observed by the agents, combined with the defendant's suspicious demeanor, his evading detention, his abandonment of the vehicle, and the alert by the canine provided agents with ample probable cause to perform a warrantless search of the silver Monte Carlo.

Probable cause may arise from a tip supplied by a confidential informant if it is corroborated. *Eisenhauer v. State*, 678 S.W.2d 947, 955 (Tex. Crim. App. 1984). In

6

the underlying case, the confidential informant advised officers when a possible drug transaction would occur in the Gold's Gym parking lot on Pablo Kisel Boulevard in Brownsville, Texas. The informant also relayed that the transfer would be initiated by someone in a red Ford pickup truck. This tip was corroborated by Officer Nieto's observations that Rodriguez, the recipient of the transfer, was nervous, abandoned his vehicle, and evaded attention, and the alert by Officer Schaelchlin's narcotics dog. *See Green v. State*, 256 S.W.3d 456, 462 (Tex. App.—Waco 2008, no pet.) (holding that "extreme nervousness" can be a factor in establishing probable cause); *$217,590.00 in U.S. Currency v. State*, 54 S.W.3d 918, 923 (Tex. App.—Corpus Christi 2001, no pet.) ("it is well-settled that a trained narcotics dog's positive alert for drugs is sufficient to establish probable cause for arrest.").

Rodriguez places great weight on the fact that neither Special Agent Moya nor Officer Nieto actually "witnessed" the transfer between the red pickup truck to the silver Monte Carlo that Rodriguez drove, and he argues that this should factor against a finding of probable cause. However, both agents testified that one of the law enforcement officers involved in the surveillance of Gold's Gym clearly reported witnessing the transfer over the radio. Further, the fact that Rodriguez's vehicle was towed to the Brownsville Police Department does not detract from the officers' ability to search the vehicle. In *Chambers v. Maroney*, the United States Supreme Court "held that police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant." *White v. State*, 521 S.W.2d 255, 269 (Tex. Crim. App. 1975) (citing *Chambers*, 399 U.S. at 51–52). In light of the "totality of circumstances" in this case, we agree with the trial

7

court that probable cause existed. *Estrada*, 154 S.W.3d at 609. Accordingly, Officer Schaelchlin's warrantless search of Rodriguez's vehicle was proper. *Guzman*, 959 S.W.2d at 634.

Because we have found one legal ground upon which to justify the warrantless search of Rodriguez's vehicle, we need not address Rodriguez's argument that he withdrew his consent to search. *See* TEX. R. APP. P. 47.1 ("the court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
17th day of April, 2014.