Troy Eugene **HOLCOMB**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 34545.

Court of Criminal Appeals of Texas.

July 12, 1972.

Rehearing Denied Oct. 18, 1972.

Melvyn Carson Bruder, Dallas (court appointed on appeal), for appellant.

Henry Wade, Dist. Atty., and James B. Scott, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an out-of-time appeal. Appellant's conviction for robbery with firearms with punishment assessed at 50 years was affirmed by this court in 172 Tex.Cr.R. 392, 356 S.W.2d 932 (1962).

Pursuant to a post-conviction application for a writ of habeas corpus under Article 11.07, Vernon's Ann.C.C.P., the convicting court found that the appellant was indigent and was represented by court-appointed trial counsel; that he gave notice of appeal; that he did not waive his right to counsel on appeal, and appealed this cause without the benefit of counsel. The convicting court determined he was entitled to an out-of-time appeal with the benefit of counsel. See Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed. 2d 811 (1963); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (holding Douglas v. California, supra, to be retroactive). See, also, Pate v. Holman, 341 F.2d 764 (5th Cir. 1965). After an examination of the record, we agree.

Now represented by court-appointed appellate counsel, appellant contends his "conviction is void in that it is predicated upon evidence seized in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States."

A summary of the facts, as taken from our prior opinion, is as follows:

"Jack L. Anderson, the complaining witness, testified that he was night manager of a Fina Service Station located in Dallas County; that about midnight of

June 17, 1961, he and a friend, James B. Davis, were having a conversation near the front entrance of the station when two men walked up and asked for a gas can; that appellant, who the witness identified at the trial as one of the two men, followed him into the station, pulled out a gun and said 'Let's have it'; that he went to the cash drawer, opened it and appellant secured the money contained therein; that appellant also took the money which was in a coin changer fastened to his belt and some $98 contained in his billfold; that appellant then stated 'I ought to shoot the big fat s. o. b.'; that he waited upon several customers who came into the station while appellant was still present and after they drove out appellant said 'Give me that money, too'; that the wire to the phone in the station was cut by appellant and he also took the keys to the witness' car. Anderson further stated that between $200 and $300 was taken, which was under his care, custody and control, without his consent on the night in question and that he was put in fear of his life or serious bodily harm by appellant's actions. The witness identified appellant as the person who took the money from him at a police line-up on June 19, 1961, and also identified State's Exhibit #1 as a .32 caliber gun similar to the one used by appellant in the robbery.

"The testimony of James B. Davis was substantially the same as that of the complaining witness.

"Police officers of the City of Dallas Police Department were called by the State and testified that around midnight on June 18, 1961, they went to an apartment house in Dallas where they found appellant in company with three companions; that appellant was found hiding in a clothes closet and placed under arrest. One of the officers identified State's Exhibit #1 as a gun belonging to appellant which was found in the apartment.

"Appellant did not testify or offer any evidence in his behalf."

It appears to be appellant's contention that evidence relating to the search of the apartment; the finding of State's Exhibit #1 in a kitchen closet; the finding of State's Exhibit #2, a pistol, in the belt of appellant's companion, Mendenhall, etc., was inadmissible since there was neither an arrest or search warrant nor probable cause and that such police action did not fall within any recognized exception to the general warrant requirement.

Without a lengthy discussion, it is clear that the record does not reflect that the officers had probable cause for the warrantless arrest and search.

On original appeal, the State did not attempt to justify the arrest and search, but urged that the appellant had no standing to complain. This court agreed, citing Rubens v. State, 166 Tex.Cr.R. 71, 311 S.W.2d 242 (1958). See Holcomb v. State, 356 S. W.2d at 934.

Appellant now contends that the court, on the original appeal in 1962, erred in so holding. He relies upon Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960).

The State again does not try to justify the arrest and search but continues to rely upon the lack of standing to complain. Rubens v. State, supra; Johnson v. State, 165 Tex.Cr.R. 563, 310 S.W.2d 70 (1958), and Stevenson v. State, 169 Tex.Cr.R. 431, 334 S.W.2d 814 (1960), are cited.

It is true that the rule relied upon in our 1962 opinion formerly prevailed in this State. See 51 Tex.Jur.2d Rev., Part 1, Searches and Seizures § 5, pp. 629–633.

The *Jones* decision (decided on March 28, 1960) gave a broader interpretation to the Fourth Amendment by stating that

". . . anyone legitimately on the premises where a search occurs may challenge its legality when its fruits are proposed to be used against him, though the earlier restrictions have been held still to apply to persons who, not having

ownership, possession, or control of the premises searched, were not present at the time of the search. In clarification of this broader interpretation, it has been said that the capacity to claim the protection of the Fourth Amendment depends, not on a property right in the place invaded, .but on the question whether the area was one in which there was a reasonable expectation of freedom from government intrusion. . . ." 51 Tex.Jur.2d, Rev., Part 1, Searches and Seizures § 5, pp. 632–33.

Despite the provisions of Article I § 9, Texas Constitution, Vernon's Ann.St., and Article 727a, Vernon's Ann.C.C.P. (1925) (now Article 38.23, Vernon's Ann.C.C.P. (1965)), this court in Stevenson v. State, supra, refused to follow *Jones*.

In Henley v. State, 387 S.W.2d 877, 880 (Tex.Cr.App.1965), this court, however, recognized the *Jones* decision when it said,

". . . We agree with appellant's contention that he would have had standing to urge this complaint, under the authority of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, *had he been on the premises at the time of the search.* . . ."

See, also, Vines v. State, 397 S.W.2d 868 (Tex.Cr.App.1966).

In the interim between *Stevenson* and *Henley* and *Vines,* the United States Supreme Court held that State courts must exclude illegally seized evidence from State criminal trials. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). See, also, Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). And, in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), it was held that the *Mapp* decision would be applicable to cases not "final" [1] prior to June 19, 1961, the date of the *Mapp* decision.

■ The *Mapp* decision was clearly applicable to the case at bar and the *Jones* decision was handed down prior to the 1962 appeal in this case. Then, and now, these decisions are applicable.

In *Jones,* the Court said:

". . . No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone *legitimately* on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their *wrongful* presence, cannot invoke the privacy of the premises searched. . . ." (Emphasis supplied.) 362 U.S. at 267, 80 S.Ct. at 734, 4 L.Ed.2d at 706.

As earlier noted, the instant case was not tried upon the theory that the appellant had or lacked the standing to complain of the search. The record does not reflect whose apartment was searched or whether appellant was legitimately or wrongfully present.

■ There was only a general objection and no assertion or allegation that the appellant owned, possessed or had a right to use or was otherwise legitimately on the premises. The record does not support the claim that the appellant had standing to question the legality of the search. Nielssen v. State, 456 S.W.2d 928 (Tex.Cr.App. 1970); Willeford v. State, 454 S.W.2d 745 (Tex.Cr.App.1970).

It is true that the record reflects that the search was directed against appellant's person, but nothing was found in his possession. He complains of the pistol (State's Exhibit #1) and bullets taken from the apartment which were found in a search of the premises, where it is not even alleged that he had the right to be,

---

[1]. By "final", the Supreme Court meant ". . . Where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio." 381 U.S. at 622, 85 S.Ct. at 1734, 14 L.Ed.2d at 604, n. 5.

and a pistol (State's Exhibit #2) and bullets taken from Mendenhall's possession.

In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the Court specifically rejected the notion that a defendant can object to the admission of evidence against him that was illegally obtained from anyone and held that only those whose Fourth Amendment rights were violated have standing to object.

■ ". . . The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." 394 U.S. at 172–173, 89 S.Ct. at 965.

■ Even if we be wrong in determining that appellant had no standing to object, it should be noted that the admission of illegally seized evidence may be harmless error. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Being of constitutional dimension, the error may not be declared to be harmless error unless the reviewing court is able to declare that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

In the instant case, the evidence of appellant's guilt was not only overwhelming, but undisputed. No defense was offered. Both Anderson and Davis identified the appellant as one of the robbers and Anderson testified, without objection, that State's Exhibit #1 "looked like" the gun used by the appellant.

■ We conclude that the error was harmless error. See Milton v. Wain-

wright, 407 U.S. 371, 92 S.Ct. 2174, 32 L. Ed.2d 1 (1972).

Appellant next claims he was deprived of due process by ". . . the State's use of a presumptively illegal line-up identification to bolster the in-court identification testimony of one of the State's witnesses, . . . ."

The ground of error relates only to the witness Davis although the complaining witness Anderson also made an in-court identification and bolstered that testimony by relating he had picked the appellant out of a police lineup the following morning.

Appellant contends that since the record is silent as to whether he had counsel at the June 19, 1961, police lineup, such silent record cannot serve as a basis for a presumption that counsel was present or that the right to counsel was waived. See Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). Relying upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), he urges that the State fell into error in bolstering the witness Davis' in-court identification with evidence of a lineup identification.

■ First, it should be observed that there was no objection to either the courtroom identification or to testimony concerning the subsequent lineup identification made by either Davis or Anderson. See Martinez v. State, 437 S.W.2d 842 (Tex. Cr.App.1969); Burns v. State, 470 S.W.2d 867 (Tex.Cr.App.1971); Renfro v. State, 156 Tex.Cr.R. 400, 242 S.W.2d 772 (1951).

■ Next, it is noted that *Gilbert* and *Wade* have no application to a lineup conducted prior to June 12, 1967, such as the one in the case at bar. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Martinez v. State, supra; Burns v. State, supra.

■ Further, even if the lineup was conducted after June 12, 1967, there is no

showing that it was conducted after formal charges had been filed so as to invoke the *Gilbert-Wade* rationale. See, Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed. 2d 411 (1972).

Actually, appellant is relegated to a claimed violation of due process in the conduct of the confrontation which depends upon the totality of the circumstances surrounding it. See Stovall v. Denno, supra; Graham v. State, 422 S.W. 2d 922, 924 (Tex.Cr.App.1968).

There is nothing in this record to support such a claimed due process violation.

Appellant complains that the State elicited testimony from the complaining witness Anderson, over objection, that

> ". . . Holcomb and this other fellow told Davis and I that they weren't amateurs at that, that they were wanted, and they had already hit about three or four places that night, and we weren't the only ones they hit."

His complaint is that such testimony improperly injected extraneous offenses before the jury.

It is observed that the complaining witness testified that the appellant and his companion had threatened to shoot him and Davis. He was then asked: "You recall anything being said about what they had been doing?" Over objection that such was a leading question, the witness Anderson answered as set out above.

Clearly, the question was not leading and the conversation which ensued during the course of the robbery was res gestae of the offense and admissible, even though it involved extraneous offenses as an exception to the general rule prohibiting the admission of extraneous offenses. See Carrier v. State, 159 Tex.Cr.R. 421, 264 S. W.2d 728 (1954); Reed v. State, 421 S. W.2d 116 (Tex.Cr.App.1967); Williams v. State, 414 S.W.2d 183 (Tex.Cr.App.1967).

It is also observed that without objection the witness Davis subsequently testified the appellant told him during the course of the robbery ". . . to get a good look at him (appellant);" that "he was wanted plenty."

Lastly, appellant complains the order of cumulation attached to the sentence in the case at bar was invalid since the sentences to which it was made cumulative were not final convictions, notices of appeal having been given. Appellant's contention is without merit. See, Jackson v. State, 449 S.W.2d 242 (Tex.Cr.App.1970), and cases there cited.

The judgment is affirmed.

DOUGLAS, J., not participating.