Joseph Matthew **BORNER**, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

Carl F. **EBELING**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 49635, 49636.

Court of Criminal Appeals of Texas.

April 16, 1975.

Rehearing Denied May 7, 1975.

Jim D. Bowmer and Bob Burleson, Temple, for appellants.

J. R. Owen, Dist. Atty., Taylor, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

These are appeals from convictions for the possession of marihuana. Punishment was assessed against each appellant at ten years. The proof shows that the appellants possessed a large amount of marihuana in an automobile.

The sufficiency of the evidence is not challenged. The complaint on appeal is that the marihuana was found in the automobile without a search warrant over the objection, among others, that it was an unreasonable search in violation of the Fourth Amendment to the Constitution of the United States.

On February 5, 1973, at approximately 2:00 p. m., Highway Patrolmen Calvin Newman and Donald Benton met a Cadillac automobile being driven in a northerly direction at a high rate of speed on Interstate Highway No. 35 near Georgetown. Newman turned the patrol car around, followed and clocked the speed of the automobile at 78 miles an hour (before the adoption of the 55-mile-an-hour speed limit). The automobile had Missouri license plates. After the lights on the patrol car were turned on the Cadillac was suddenly driven onto the Theon exit to the service road. Officer Newman testified: "[a]s I turned the overhead lights on as we were going up the exit ramp, the passenger [in the Cadillac] was holding something up above the dash, I couldn't tell exactly what

it was, looked like he was sighting it. I thought it might have been a pair of binoculars or something, . . . " and, " . . . The passenger brought the object down that he had had, and put it in the seat, and I could tell at that time that it wasn't a pair of binoculars, but I didn't know what it was." He further stated that he shoved the object between himself and the driver. After the Cadillac was stopped, the driver, Borner, got out and approached Officer Newman. Borner presented a Missouri driver's license.

Patrolman Benton was asked if he saw anything to arouse his suspicion. He answered that they saw the passenger shuffling around and trying to hide something in the seat. After stopping the car, both officers got out. Benton went to the right side, opened the door and asked the passenger to get out. Benton then looked on the seat for the object that he had seen in the hands of the passenger. In a small space by the arm rest he reached in and found a pistol, left it there, backed out of the car and told Ebeling, the passenger, to put his hands on the car. Benton told Officer Newman that he had found a pistol and then checked Ebeling for further weapons. He found a clip full of ammunition in Ebeling's boot. Benton got back in the Cadillac and pulled out a .380 caliber Walther pistol from the space by the arm rest. As he started to back out of the car he scanned the area, looked down into the open ashtray and saw what looked like a marihuana cigarette butt on top of filtertip butts. He smelled a faint odor of marihuana, picked up the butt and it had a distinctive odor of marihuana. Benton showed the pistol and cigarette butt to Newman who then had Borner and Ebeling step to the back of the car. On the back seat he saw a brown kit, opened it and found a large darvon capsule which contained what was later determined to be 1.5 grams of marihuana. He found no other marihuana then but noticed that the smell of marihuana was stronger in the back than it had been in the front of the automobile.

The officers could not find a key to the trunk of the Cadillac. They were told it had been lost. They tried to open it with the ignition key but it would not work. The officers then called to Georgetown for a wrecker. After the wrecker arrived one of the patrolmen, in an effort to get the trunk key from appellants, pretended that he would open the trunk of the car with a crowbar. Ebeling protested and it was not pried open. The wrecker lifted the rear end of the car and towed it to Compton Motor Company in Georgetown where a key was made. The key would not work until the car was lowered to the ground. After opening the trunk the officers saw two large trash bags of marihuana. They closed the trunk, drove to the police station and there they found two more trash bags of marihuana. These four bags contained 20, 14.5, 19 and 14.5 pounds of marihuana, a total of 68 pounds.

Appellants, in their motion to suppress, relied upon, among other authorities, the Fourth Amendment to the Constitution of the United States; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and Brown v. State, 481 S.W.2d 106 (Tex.Cr. App.1972).

*Search on the Highway*

Appellant first contends that the evidence obtained was inadmissible because of "The Initial Illegal Search at The Scene of The Arrest."

■ The officers had a right to arrest Borner for driving 78 miles an hour on the highway, Article 6701d, Section 153, Vernon's Ann.Civ.St., and under Section 148 of that Article to take him into custody and to a magistrate. See Tores v. State, 518 S.W.2d 378 (Tex.Cr.App.1974).

Officer Benton testified that he had the passenger Ebeling get out of the car because he was shuffling around and made a rapid movement trying to hide something in the seat and " . . . for our own

protection, we usually check the immediate area of the front seat."

During the discussion concerning the legality of the search for weapons at the scene of the arrest and the object being moved to the seat, Mr. Connor (trial counsel) argued:

" . . . We don't know what it was. It could have been binoculars; it could have been gloves; could have been a scarf; could have been a glasses case; could have been a book; could have been a gun. . . . "

When one of the officers saw the passenger move an object and apparently sight with it and then see it was not binoculars, he had reason to think it might have been a gun. The officer did not search the passenger until he found the gun.

Officer Benton used good judgment under the circumstances for his own protection in having the passenger get out of the car. See Grego v. State, 456 S.W.2d 123 (Tex.Cr.App.1970). This is true even though he stated that at the time he looked into the car he was not afraid because Newman was there.

In Wood v. State, 515 S.W.2d 300 (Tex.Cr.App.1974), this Court noted "that an occupant of an automobile is just as subject to a reasonable stop and to a reasonable frisk as is a pedestrian." In that case Tores, the driver, was arrested for a traffic violation. Wood was the passenger. Wood had difficulty keeping his eyes open and the officer formed the opinion that he was under the influence of alcohol or drugs. The officer patted down Wood, felt what he thought was a knife and found three rolls of coins and some currency in his pocket. He radioed for assistance. He then searched and found two pistols in the car.

In Wood, the Court wrote:

"The Fourth Amendment has been held not to require a policeman who lacks a precise level of information necessary for probable cause to arrest to simply shrug his shoulder and allow crime to occur or a criminal to escape. Adams v. Williams, 407 U.S. 143, 92 S. Ct. 1921, 32 L.Ed.2d 612 (1972). Circumstances short of probable cause for arrest may justify temporary detention for investigation and questioning. Baity v. State, 455 S.W.2d 305 (Tex.Cr.App. 1970), cert. denied 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158. Thus, neither tests of reliability demanded for showing of probable cause nor showing of probable cause is required to justify an investigative stop. United States v. Rollerson, 491 F.2d 1209 (5th Cir. 1974). A brief stop of a suspicious individual in order to determine his identity or to maintain status quo momentarily while obtaining more information may be reasonable in light of facts known to the officer at the time. Adams v. Williams, supra.

"The purpose of a limited search after investigatory stop is not to discover evidence of crime, but to allow the peace officer to pursue investigation without fear of violence. *So long as the officer is entitled to make a forcible stop and has reason to believe that the suspect is armed and dangerous, the officer may conduct a weapons search limited in scope to the purpose of enabling the officer to pursue investigation without fear of violence. . . .* " (Emphasis supplied)

■ In the present case the search of the area where the occupants were seated was for the protection of the officers. The Supreme Court of the United States authorizes searches after an arrest for the protection of officers for any weapon that might be readily obtained. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Mr. Justice Black, speaking for the Supreme Court of the United States in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, wrote:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things

which might be used to assault an officer . . . ."

The patrolmen were authorized to arrest Borner. They knew of no crime that Ebeling had committed. His movements authorized the search.

■ We hold that the officers were authorized to search the interior of the automobile at the place of the arrest and that the cigarette butt, the 1.5 grams of marihuana and the pistol were admissible into evidence.

When Officer Benton found the marihuana in the ash tray and in the darvon container he knew that an offense of the possession of marihuana was being committed. Article 725b, Vernon's Ann.P.C.[1]

### Search of the Trunk of the Car

Did the search of the trunk of the automobile after it had been moved to Georgetown constitute an unreasonable search under the Fourth Amendment and previous decisions of the Supreme Court and of this Court?

After removing the marihuana from the interior of the car, the officers detected a stronger odor of marihuana from the back part of the car than they had detected before removal of the marihuana from the ashtray and darvon container. They had probable cause to believe that appellants still possessed marihuana. Had the officers found the key to the trunk at the scene of the arrest they would have found the cause of the strong odor—the 68 pounds of marihuana in the trunk.

The case most closely in point is Taylor v. State, 421 S.W.2d 403 (Tex.Cr.App. 1967). In Taylor this Court upheld the search of an automobile at a courthouse after the accused was in jail. The arrest was for a traffic violation near Waskom. Before the search probable cause was shown that another crime had been committed. Officers first took Taylor and his companion to a justice of the peace in Waskom. No warrant was obtained there. The car was then taken to the courthouse in Marshall where Taylor and his companion were locked up in jail. Two justices of the peace were present at the courthouse. Approximately an hour after the arrest an officer, with the key taken from Taylor, opened the trunk and searched it without a warrant. There he found a coffee can, took the lid off and found marihuana. This Court held that the search without a warrant was legal and the marihuana was admissible and wrote:

"[t]he removal of the automobile to Marshall and the subsequent search were a series of events constituting one continuous happening."

and,

"As pointed out by the Supreme Court in Cooper v. State of California [386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730], and in Preston v. United States, [376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777], the question there decided was not whether the search was authorized by state law, but whether the search was reasonable under the Fourth Amendment. Both opinions make it clear that whether a search is reasonable depends upon the facts and circumstances of each case."

In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, it is written:

"It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' United States v. Rabinowitz, 339 U.S. 56, 66, 94 L.Ed. 653, 70 S.Ct. 430."

The contention that the present case is weaker for affirmance than the Taylor case cannot be sustained. A justice of the peace was present at Waskom and two were in the courthouse at Marshall, but a

---

1. The Controlled Substances Act which made the possession of less than four ounces of marihuana a misdemeanor did not become effective until August, 1973.

search warrant was not obtained. The car was searched about an hour after the arrest.

That was a continuous transaction and the second search at the courthouse was legal and the evidence obtained there was admissible.

The search in the present case could and would have been made at the scene had the officers found the trunk key.

The searches in the Taylor case and in the present case would pass muster by the Supreme Court of the United States under Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970).

Justice Powell, in speaking for the Supreme Court of the United States, recently wrote in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, 16 Crim.L.Rep. 3052 (February 18, 1975), as follows:

"Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, Beck v. Ohio, *supra*, 379 U.S. [89, 91] at 96, 85 S.Ct. [223] at 228; Wong Sun v. United States, 371 U.S. 471, 479–482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959); Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 1232, 92 L.Ed. 1663 (1948)."

Brown v. State, 481 S.W.2d 106 (Tex. Cr.App.1972), cited by appellant is not in point because there was no violation of the law for an arrest and there was no probable cause but only an inarticulate hunch that a crime might have been committed. The arrest was illegal.

Truitt v. State, 505 S.W.2d 594 (Tex. Cr.App.1974), is distinguishable. It was decided on the ground that the information furnished by an unnamed, unknown informant not shown to be reliable was insufficient for the arrest of Truitt.

Stoddard v. State, 475 S.W.2d 744 (Tex.Cr.App.1972), is distinguishable. Stoddard was not arrested in a car but in his office for the possession of marihuana and taken to jail. Later officers searched his car which was parked some distance from his office and found the contraband. There were no exigent circumstances for the subsequent search.

■ The present case is like the Taylor case when an arrest was made when the car was stopped. The officers had a right to continue the search because it was a continuing transaction. The differences between Stoddard and the present case are material.

Likewise, White v. State, Tex.Cr.App., 521 S.W.2d 255 (1974), is distinguishable but the difference is not so apparent as in the Taylor case, supra. In the White case the officers did not find evidence of another crime in the car when the accused was arrested. He was placed in jail. Officers asked to search his car, and he refused to consent to a search. This Court, with two judges dissenting, held that search without a warrant to be illegal.

The facts in Keah v. State, 508 S.W.2d 836 (Tex.Cr.App.1974), are different. That decision is limited as stated in the opinion to the facts of that case.

Harris v. State, 486 S.W.2d 88 (Tex.Cr. App.1972), is not directly in point but it should be mentioned. In that case officers had information from a reliable informer that Harris possessed narcotics. Officers arrested Harris in a cafe near his car. When they went to search the car Harris broke the key off in the door. An officer

got a knife, pried open the side vent, opened the door and searched without a warrant and found the contraband in the car. This Court held that the warrantless search was legal and that the evidence obtained as a result was admissible.

■ We hold that the cases of Mapp v. Ohio, supra, and Wong Sun v. United States, supra, are not applicable, and the Fourth Amendment was not violated and the officers were authorized to search the Cadillac in Georgetown.

No error is shown. The judgments are affirmed.