**Raul MALDONADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 49286.**

Court of Criminal Appeals of Texas.

Oct. 15, 1975.

James S. Bates, Edinburg, for appellant.

Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

The offense was possession of more than four ounces of marihuana; the punishment, confinement for seven years and a fine of five thousand dollars.

Appellant's sole ground of error is that the trial court erred in overruling his motion to suppress and admitting marihuana into evidence at trial. He asserts that a warrantless search of the vehicle containing the marihuana violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. The State in its brief avers only that appellant has no standing to contest the legality of the search.

The facts relevant to a proper disposition of this case are lengthy and somewhat complicated, involving two arrests and several vehicle searches. On August 31, 1973, Highway Patrolmen Franklin W. Robinson and Stanley Oldham joined a road block on Interstate 35 about three miles south of New Braunfels. Robinson and Oldham arrived at the road block at approximately 2:50 a. m. The road block had been established by other officers to attempt to apprehend some prisoners who had escaped from a jail in Hondo. Every northbound vehicle was stopped.

Appellant arrived on the scene at 3:35 a. m. He was alone and driving a 1968 Ford truck with a blue cab and two green sideboards. The back of the truck was open.

Robinson asked to see appellant's driver's license. Appellant responded that he had a valid license but had left it at home. He could produce no identification, but gave his name and address as Raul Maldonado of 1122 North 19½ Street, McAllen, Texas. In answer to further questions, appellant stated that he did not have the registration receipt for the truck, but the owner was a close friend, "Jose," whose last name he could not remember. Appellant gave the officer the vital statistics that might aid in determining whether he held a valid driver's license. While the registration and license checks were made by radio, Robinson again asked appellant who owned the truck. This time the response was "Pedro," but again he could not remember the last name. The return on the registration check showed the owner to be Jose Garcia of Mission. Because of the lateness of the hour and the combination of name and birth date, it could not be determined whether appellant held a valid driver's license.

When asked about his destination, appellant said that he was traveling to San Antonio to pick up some furniture at a location near the Alamo, but could give no further details. He explained his presence north of San Antonio by stating that he was first going to visit some relatives in Austin, but he could not furnish any name, address, or telephone number.

Appellant was arrested for operating a motor vehicle without a valid driver's license and failure to display vehicle registration receipts. The officers frisked him and inspected the exterior of the truck. The back of the truck appeared to be empty. The front license plate was wired on and bore a rusted bolt mark, indicating that at one time the plate had been bolted to some vehicle.

Appellant was not taken to the Comal County jail until 4:15 a. m. The arresting officer at the pre-trial hearing testified that during all this time appellant's demeanor and conduct were wholly unsuspicious. He did not appear to be under the influence of any intoxicant, stood or sat quietly by the side of the road while waiting to be taken to jail, and generally "was co-operating" in

every way. The interior of the truck was not searched, the officer testified, because no police officer present felt that the appellant posed any danger.

At 4:30 a. m. the truck was towed to M.G.'s Garage in New Braunfels, which was customarily employed by the police for general storage of vehicles. At 6:45 a. m. the road block was discontinued.

At 7:00 a. m. Robinson telephoned Bobby G. Prince, a criminal investigator in the Motor Vehicle Theft Division of the Texas Department of Public Safety. Robinson expressed his suspicion that the truck was stolen based upon the details recited above: appellant's lack of possession of a driver's license or truck registration receipt, lack of information about the owner, unsatisfactory explanation of his destination and route, and the rusted bolt mark on the front license plate.

At 8:15 a. m. Prince began his investigation by going to M.G.'s Garage. His investigation consisted of checking the vehicle identification number on the door, noticing that there was fresh paint under the identification plate, and determining shortly afterwards by radio that the identification number corresponded to the license plate number, both of which had been issued to the truck. At midmorning he learned that there was no stolen report on the truck. If Prince had also checked the vehicle identification number on the frame of the truck and the confidential police number located elsewhere on the truck, he would have discovered, as ascertained much later, that both these numbers also corresponded to the others.

During this investigation, Prince drove to the Comal County Courthouse. Before his arrival, appellant pled guilty to the two offenses with which he was charged, paid his fine, and walked out of the courtroom, apparently a free man once again. He proceeded to walk toward a door in the court-

house that led to the outside parking lot. At this point, appellant was not in custody or under arrest for any charge.

Before appellant reached the door, Prince entered and stopped him. Prince asked appellant if he was Raul Maldonado. Appellant answered that he was, whereupon Prince stated that he wished to talk to him.

During this conversation, appellant's memory and lapses of memory substantially corresponded to those of the early morning, except that he now identified the owner of the truck as "Pepi."

For the next three hours, or between 9:00 a. m. and noon, Prince continued to talk to appellant in a room in the Sheriff's office at the courthouse. Although appellant was apparently left unattended at times for this three hour period, he was nevertheless restrained of his liberty. Prince had already once restrained appellant from leaving the courthouse. If Prince had observed him trying to leave again, it is reasonable to infer that he would have stopped him again.

■■■ Appellant was "under arrest" at 9:00 a. m. or very shortly thereafter. "It is not the actual physical taking into custody that will constitute an arrest. An arrest is complete whenever a person's liberty of movement is restricted or restrained." *Hardinge v. State*, Tex.Cr.App., 500 S.W.2d 870; Vernon's Ann.C.C.P., Article 15.22.

Appellant was returned to jail at noon.

About 2:00 p.m., with appellant still in custody, Prince learned from South Texas police authorities that they had no knowledge of Raul Maldonado, that he had no drug arrests, that the registered owner of the truck was in Michigan, and that "in the past trucks of this nature [had been] used to transport narcotics, in different methods."[1]

At about 3:00 p.m. Prince returned to M.G.'s Garage to examine the truck once

---

1. We note that none of this information could have contributed in the slightest to probable cause to believe either that appellant had committed any offense whatsoever or that the truck was stolen.

more. He was accompanied by Sergeant B. L. Hierholzer of the Narcotics Service, Department of Public Safety, San Antonio, and Captain John Wood of the Texas Rangers. The officers first checked the identification number on the frame of the truck, which matched the door identification and license plate numbers.

Then the confidential or "secondary VIN number" on the truck was finally checked, and it, too, matched the door and engine numbers as well as corresponding to the license plate number.

Finally, Prince noticed that the inside of the truck appeared to have a shorter depth than the outside. Upon climbing into the back of the truck, the officers noticed a piece of plywood nailed onto the floor. The officers extracted the nails and discovered a false compartment in the truck containing 650 wrapped packages of marihuana.

The contention that appellant has no standing to contest the legality of the search is without merit.

In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the Supreme Court of the United States enumerated three bases upon which a defendant might establish that he is a "person aggrieved" by an unlawful search and seizure: (1) his proprietary or possessory interest in the thing searched or seized; (2) his legitimate presence on the premises searched; or (3) his having been charged with an offense an essential element of which is possession of the seized evidence. The last basis is commonly referred to as the "automatic standing" doctrine.

■ Appellant has standing under the first and last of these bases. The evidence does not establish that the appellant did not have a proprietary or possessory interest in the truck at the time of the search. The State correctly points out that the evidence also does not establish the contrary.[2]

■ In *Clemons v. State*, Tex.Cr.App., 501 S.W.2d 92, 93, we quoted approvingly from *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) and *Jones*, supra:

"[I]t is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the *allegation is disputed* that he establish, that he himself was the victim of an invasion of privacy." (Emphasis added.)

Appellant's standing was never contested in the proceedings below. The State raises the issue for the first time in its brief upon appeal. The State should not be heard to complain of an incomplete record when its failure to dispute appellant's standing is responsible for the deficiency.

Moreover, appellant has automatic standing because he was charged with possession of marihuana. The holding of *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), was that a defendant's testimony at a pre-trial hearing in support of standing is inadmissible at the trial on guilt or innocence. This holding has in many cases reduced the need for the automatic standing doctrine established in *Jones*, supra. *Simmons*, itself, however, reaffirmed the doctrine, 390 U.S. at 390, 88 S.Ct. at 974. To this day, as the Court of Appeals for the Fifth Circuit has recently said, "[T]he rule is still the law." *United States v. Hunt*, 505 F.2d 931, 939 n. 9 (5 Cir. 1974). See *Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973).

■ *Jones*, supra, has long been the law in Texas. *Henley v. State*, Tex.Cr.App., 387 S.W.2d 877 (1964); *Vines v. State*, Tex.Cr. App., 397 S.W.2d 868 (1966); *Holcomb v. State*, Tex.Cr.App., 484 S.W.2d 929 (1972), cert. denied, 410 U.S. 940, 93 S.Ct. 1404, 35 L.Ed.2d 606 (1973). In the recent case of

---

2. The record contains only hearsay testimony by several officers that appellant continually claimed that he had borrowed the truck from a friend. If true, this fact would suffice to give appellant a possessory interest in the truck and, thus, standing.

*Hutchinson v. State*, Tex.Cr.App., 509 S.W.2d 598, we considered a defendant's claim that he had automatic standing. The claim was rejected because the appellant there was not charged with a possessory offense. Here, where appellant has been charged with such an offense, he has automatic standing.

■ We therefore now turn to the issue of the lawfulness of the 3:00 p.m. search. To hold it valid we must make three findings:

(1) That the search was supported by probable cause, the threshold requirement of any valid search.

(2) That the failure to obtain a search warrant was excusable because the search was incident to a lawful arrest or was justified by some other exigent circumstance furnishing an exception to the warrant requirement.

(3) That the scope of the search was consistent with its purpose.

The inability to make any one of these findings must invalidate the entire search, and mandate the further conclusion that the trial judge erred in overruling appellant's pre-trial motion to suppress the marihuana. In spite of our doubts as to the existence of probable cause,[3] we decline to invalidate the search on that basis. Rather, we hold that the trial judge should have suppressed the marihuana because the police failed to obtain a warrant and because, even if the failure to obtain a warrant was excusable, the scope of the search exceeded

any permissible purpose for which it may have been initiated.

■ The State's failure to obtain a search warrant cannot be excused. We begin with the proposition that "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Hence, the State must show incidence of the search to the arrest or the existence of "exigent circumstances" within an established exception to the warrant requirement to justify the failure to obtain a warrant. *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

■ The search was not incident to either of appellant's arrests. First, at the time of the search appellant had discharged his obligation for the traffic offenses, which in any case could not have conferred the right to conduct a warrantless general search.

■ Second, appellant's second arrest occurred about 9:00 a.m. at the Comal County Courthouse. The third vehicle search was conducted at 3:00 p.m. at M.G.'s Garage. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964).[4]

**3.** It should be noted that the search was *not* supported by probable cause to believe that the truck contained marihuana or any other contraband. Prince testified that he did not "see or observe or smell anything that gave . . . reason to believe that the truck was transporting marihuana or any form of narcotics." Prince knew that appellant had no record of any drug arrest. And he testified that the appellant did nothing at any time to furnish a reasonable belief that he was in possession or had been in recent possession of any amount of drugs. Prince had only the circumstance of an irregularity in the back bed of the truck. The facts

would hardly warrant a man of reasonable prudence in concluding that contraband was contained therein.

The only probable cause that may have existed, and which we assume, was probable cause to believe that the truck was a stolen vehicle.

**4.** Hence, appellant's second arrest, even if unlawful, could not mandate a reversal of his conviction. The reason is that neither testimony of this arrest nor any evidence obtained as a result of it was necessary to the judge's determination that appellant was guilty of possession of marihuana. Be-

The truck while in police custody could not be subject to the moving vehicle exception of *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

On its face, *Chambers v. Maroney*, supra, might be seen as justifying the search. In that case some men had committed a robbery at a gas station. On the basis of a detailed description of the number of men, the clothing of two of them, and the automobile used in the robbery, police stopped the petitioner and three other men. All were arrested and the car was taken to the police station where a warrantless search revealed guns used and money taken in the robbery. The Court rejected the petitioner's contention that the failure to obtain a warrant invalidated the search:

> "Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances . . . In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained."

*Chambers v. Maroney*, supra, 399 U.S. at 51, 52, 90 S.Ct. at 1981, 1982.

Here, however, the vehicle was already immobilized and appellant had been in custody for hours. The vehicle was under guard in a fenced yard used by the police for storage of vehicles in their custody and no one could tamper with it in any way. Its continued immobilization until a search warrant could be obtained would .have been no greater intrusion upon the appellant than that already imposed by virtue of his incarceration. *Chambers*, supra, was not decided in this context, but, rather, in a context where the immobilization of a vehicle while a search warrant was obtained would have itself constituted an intrusion.

Because the accused was in custody at the time of the search, we find the facts and rationale of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and *Stoddard v. State*, Tex.Cr. App., 475 S.W.2d 744 applicable to the instant case. In *Coolidge*, supra, at the time petitioner was arrested at his home an automobile in his driveway was seized, taken to the police station, and searched without a valid warrant. The court stated:

> "*Chambers*, supra, is of no help to the State, since that case held only that, where the police may stop and search an automobile under *Carroll*, they may also seize it and search it later at the police station. . . . On its face, Chambers purports to deal *only* with situations in which the police may legitimately make a

cause the inculpatory evidence was not seized in a search incident to the arrest, illegality of the arrest would not have tainted that evidence. *Stiggers v. State*, Tex.Cr. App., 506 S.W.2d 609; *Gross v. State*, Tex. Cr.App., 493 S.W.2d 791; *Frazier v. State*, Tex.Cr.App., 481 S.W.2d 857; *Garcia v. State*, Tex.Cr.App., 472 S.W.2d 784. Moreover, such cases as *Borner v. State*, Tex.Cr.App., 521 S.W.2d 852; *Gomez v. State*, Tex.Cr.App., 470 S.W.2d 871, and *Taylor v. State*, Tex.Cr.App., 421 S.W.2d 403, cert. denied, 393 U.S. 916, 89 S.Ct. 241, 21 L.Ed.2d 201 (1968), are not involved. The relevant inquiry in such cases was whether the removal of an automobile and its subsequent search were part of a series of events constituting one continuous hap-

pening. That test in effect inquires only whether reasonable suspicions have gradually accumulated so as to constitute probable cause to arrest and render permissible as *incident thereto* a search of the arrestee's vehicle. The test has no application where, as in the instant case, the search is not incident either to the initial arrest or to the subsequent arrest for a more serious offense. The test in any case can furnish no broader exception to the warrant requirement than that afforded by any search incident to a lawful arrest under *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 J..Ed.2d 685 (1969), and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

warrantless search under *Carroll v. United States . . . .*"

*Coolidge v. New Hampshire*, supra, 403 U.S. at 463 &n. 20, 91 S.Ct. at 2036 &n. 20 (emphasis in original). Similarly, the State here cannot rely on *Carroll*, supra, because the truck was beyond appellant's control at the time of his second arrest. If *Carroll* is inapplicable, so is *Chambers*. On the contrary, here, as in *Coolidge*, the warrantless search was *planned*. *Coolidge*, supra, 403 U.S. at 471 n. 27, 91 S.Ct. at 2041 n. 27. Where the search is planned, the thing searched is beyond the effective reach of the accused, and the obtaining of a warrant involves no greater intrusion upon the accused than that already imposed upon him, there is no exigent circumstance justifying a warrantless search. As Investigator Prince himself testified at the pre-trial hearing:

"Q. All right. Was the Justice of the Peace office at the Comal County courthouse still open at that time [3:00 p.m.]?

"A. Yes, sir.

"Q. Did you come down and attempt to get a search warrant?

"A. No, sir, I did not.

"Q. To your knowledge did anyone attempt to come down and get·a search warrant to search the truck?

"A. No, sir, not to my knowledge.

"Q. Was there any legitimate reason why one could not have been procured?

"A. No, sir."

We find that no warrantless search was authorized under any exception to the warrant requirement.

 There is yet another reason why the search must fail. The scope of a search is limited to the purpose which made its initiation permissible. *Coolidge v. New Hampshire*, supra ; *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Haynes v. State*, Tex.Cr.App., 475 S.W.2d 739. The purpose of this search was to look for evidence that the truck was stolen. The scope of such a search might reasonably have been expected to include examination of all identification numbers and of any area of the truck where evidence that someone else had owned or driven the truck might reasonably be expected to be found. Hence, a search of the glove compartment, floorboards, and rear areas might, for example, turn up some document or item bearing the true owner's name. A search of the rear area of the truck might uncover some object belonging to the owner, perhaps with his name or address thereon. But once the police began ripping up the floorboards of the rear area of the truck, the permissible scope of a search for this purpose was exceeded. It could not reasonably be expected that evidence of theft might be uncovered by these means. Rather, a variety of suspicious circumstances, some justified and some ill-founded precipitated an "exploratory search," unsupported by independent probable cause to believe contraband might be discovered, and beyond the scope of any search that was supported by probable cause. *Phenix v. State*, Tex.Cr.App., 488 S.W.2d 759; *Haynes v. State*, Tex.Cr.App., 475 S.W.2d 739.

We find the search and seizure were in violation of appellant's constitutional rights, and the fruits should have been excluded from evidence.

The judgment is reversed and the cause remanded.

MORRISON, Judge (concurring).

I concur in the reversal of this conviction, but not entirely upon the reasoning of my Brother Odom. As I see it, the probable cause to search the truck ended at noon. Up until that time the officers were seeking to determine if the truck was stolen, and they had ample probable cause to pursue their search to that point. However, they were never able to establish that the truck was stolen.

When the officers branched off on a new and independent narcotics investigation

with no more information than they had, their original probable cause came to an end and any search thereafter was illegal. It is important to note that up until noon of the day of appellant's arrest the motor vehicle theft investigator had found nothing about the appellant or about the truck to alert him in any way to the probability that the truck was being used for narcotics.

Shortly after noon the motor theft investigator went to San Antonio and returned with a Texas Ranger and a narcotics investigator and the search was reinstituted. This was done upon the scant information, from someone the motor theft investigator did not know, "that trucks in the past of this type had been used to transport narcotics".

The officers' original probable cause will not carry over to this second search. It is obvious that we do not have in the case at bar "the same continuity of purpose" discussed in our opinion on rehearing in *Taylor v. State*, Tex.Cr.App., 421 S.W.2d 403, 408.

DOUGLAS, Judge (dissenting).

The writer is of the opinion that the officers had probable cause to believe that the truck was stolen and that the search was not unreasonable.

Appellant's sole ground of error is that the court erred in admitting the marihuana obtained from the search. He contends that it was obtained as a result of an illegal warrantless search and seizure in the absence of probable cause and exigent circumstances and in violation of the applicable provisions of the United States Constitution and the laws of Texas.

The record of the evidence at the hearing on appellant's motion to suppress was admitted by stipulation as evidence at the trial. The police report filed in the case was also admitted into evidence. All evidence was admitted subject to the appellant's objection.

At about 2:30 a. m. on the morning of Friday, August 31, 1973, Officers Frank Robinson and Stanley Oldham of the Texas Department of Public Safety established a roadblock on Interstate 35 south of New Braunfels. The purpose of the roadblock was to locate escapees from the Hondo jail. All northbound traffic was stopped at the roadblock.

At about 3:35 a. m., appellant was stopped at the roadblock. He was driving a 1968 Ford truck. Upon stopping the appellant, the officers asked him if he could show them his driver's license. The appellant said that he did not have his driver's license with him. The appellant was not able to produce any license receipts for the truck. The appellant gave his name as Raul Maldonado and his birth date as 07–06–52. However, when questioned as to the owner of the truck, the appellant said that it belonged to a close friend of his, Jose, but he was unable to supply Jose's last name or address. Later, while the officers ran a license check, the appellant said that Pedro owned the car, but again was unable to supply a last name.

Apparently due to the combination of the name of the appellant and the birth date, the Department of Public Safety in Austin was unable to give the officers any verification of the appellant's driver's license. The officers also ran a check on the license plates and determined that they were registered to a Jose Garcia of Misson. During this interval, the officers frisked the appellant for weapons and walked around the truck to see if it or its contents posed any danger to the police. No one else was in the truck.

At about 4:15 a. m., the officers arrested appellant for operating a motor vehicle without a valid driver's license and for failure to display license receipts for the truck. The appellant was taken to the Comal County jail by a Comal County deputy. The officers took custody of the truck and had a wrecker from a private garage in New Braunfels tow the truck away. The truck was stored in the garage. The garage was located about three miles from the

county jail. The officers stayed at the roadblock until about 6:45 a. m.

At about 7:00 a. m. on August 31, 1973, Officer Robinson telephoned Officer Prince, an auto theft investigator with the Department of Public Safety stationed in New Braunfels. Officer Robinson during the course of the call told Officer Prince why he believed that the truck was stolen. While at the roadblock the following was determined about the appellant and the truck: the appellant had no driver's license with him nor could any record of one be located; the appellant did not have any license receipts for the truck; the appellant could not give the name or address of the owner of the truck; the appellant said that he was going to San Antonio to pick up some furniture, but could give neither the name, address or phone number of his destination; the appellant said that he was traveling north of San Antonio because he was going to visit relatives in Austin, but could not give any names, addresses, or phone numbers of relatives for verification; the license plates were rusted where they were tied on with wire indicating that they had been previously bolted on to this or some other vehicle.

Officer Prince first saw the truck at about 8:15 a. m. on the morning of August 31. The officer testified that he knew that a vehicle identification number was located on the door of that particular model truck, and that he knew where another number was located on the frame; however, he followed what he considered normal procedure and first ran a registration check on the license plates to see if the license numbers matched the number on the door. At this point Officer Prince noticed that the number on the door had fresh paint underneath it. At about mid-morning of the same day, Officer Prince received an answer on the license registration check: the truck had not been reported stolen.

Officer Prince interviewed the appellant at about 9:00 a. m. at the courthouse. The appellant had paid his fines and was no longer in custody. The officer talked with the appellant at the door by the sheriff's office which led to the parking lot. During this conversation, the appellant said that his name was "Maldon" and that the owner of the truck was a man named Pepi. Officer Prince ran an independent check on the driver's license of "Raul Maldon". The answer received from Austin was that there was no "Maldon", but that there was a Raul Maldonado, and Austin proceeded to give the appellant's arrest record. However, the department did not give the officer any information as to the appellant's driver's license. The appellant also said that he was traveling north of San Antonio on a trip to his relatives in Austin and that he planned to return to San Antonio to pick up some furniture. Again he could not supply any names or addresses in Austin or in San Antonio.

During the morning of the 31st, Officer Prince requested that the sheriff's department of Hidalgo County visit the address of the truck's registered owner, Jose Garcia. Officer Prince received a reply from the sheriff's department in Mission at about 2:00 p. m. that there was such a man and an address, but that he was currently in Michigan.

The appellant was returned to jail at about noon. Officer Prince requested that the sheriff's department hold the appellant until they could contact the owner of the truck. At that time, Officer Prince had not yet received the information from Hidalgo County that the owner was in Michigan.

Officer Prince went to San Antonio while waiting for a reply from Hidalgo County. Upon learning that the owner of the truck was in Michigan, he returned to New Braunfels with Officers Hierholzer and Wood of the Department of Public Safety and the Texas Rangers, respectively. The purpose of this second trip to the truck was to check the hidden identification numbers on the truck. This final investigation of the truck took place at about 3:00 or 3:30 p. m., August 31, 1973.

During this investigation, Officer Prince matched the vehicle identification number on the door with the police number under the hood and the confidential vehicle identification number on the frame. All of these numbers matched the numbers listed with the license plate records. However, Officer Prince noticed that the police number did not appear to be die-stamped together because the numbers were placed on the body of the truck in an uneven manner.

The truck was a Ford stake-bed or grain-bed truck with only three sides to the bed. When looking from the rear to the front of the truck, the officer could see completely into the bed. While walking around the truck, Officer Prince noticed that the depth of the bed was different on the outside than it was on the inside of the truck. The outside of the truck was green while the inside of the truck had recently been painted black. Upon noticing the difference in depth, Officer Prince crawled up into the bed of the truck and saw that there was a false front compartment. Marks on the freshly painted sidepanels led the officer to believe that the false front had been raised in the past.

Officer Prince brought the false compartment to the attention of the other officers. Together the officers loosened the nails holding down the plywood top and raised up the top. Under the plywood was a layer of plastic paper. They lifted up the paper and found what they believed to be marihuana. The officers returned to the courthouse at about 5:00 p. m. and charged the appellant with possession of marihuana. The record reflects that 650 packages of marihuana were found in the false compartment.

The legality of the search does not turn on the existence of probable cause to believe that the truck contained contraband, but the probable cause to believe that the truck was stolen. It makes no difference whether appellant was or was not under arrest at the time the search was made.

As stated by the United States Supreme Court in *Carroll v. United States,* 267 U.S.

132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), with respect to the search of a vehicle, it is not the validity of the arrest of the occupants that justifies a search of a vehicle, but the probable cause to believe that the contents or the status of the vehicle violates the law. The legality of the search of the truck does not depend upon the grounds of arrest against the appellant nor necessarily upon the probable cause to believe that the vehicle contained contraband.

Probable cause to believe that the object of a search violates the law or contains evidence of a crime is an essential element of any search. Whether a warrantless search is based upon probable cause depends upon the facts and circumstances of the particular case. The test is whether the person conducting the search or making the arrest has facts and circumstances within his knowledge or of which he has reasonably trustworthy information to warrant a reasonable and prudent man in the belief that a particular person has committed or is committing a crime and that such a search would produce evidence pertaining to a crime. *Hooper v. State,* 516 S.W.2d 941 (Tex.Cr.App.1974).

After the officers stopped the appellant's truck on the highway and questioned him, they had probable cause to believe that the car was stolen: the appellant was unable to produce a valid driver's license or any license receipts for the truck; the officers were unable to get any verification on the appellant's driver's license; the license plates on the truck appeared to have been previously on another vehicle; the appellant was unable to give the name of the owner of the truck with any certainty, nor was he able to give any address for the owner; the appellant was unable to give any names or addresses pertaining to his destinations either in Austin or in San Antonio.

In *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the United States Supreme Court sanctioned a warrantless search of an automobile at the po-

lice station subsequent to an arrest on the highway where there was probable cause to search the automobile on the highway. As in *Chambers v. Maroney,* supra, probable cause to think the vehicle searched was stolen still existed when the truck was taken into police custody and stored in the garage in New Braunfels. As in *Gomez v. State,* 470 S.W.2d 871 (Tex.Cr.App.1971), it was necessary in the present case to remove the truck from the highway in order to carry on the investigation of the truck in a less dangerous location. In the present case, the arresting officers were under orders to conduct a roadblock, the purpose of which was to capture escaped prisoners. The officers were justified in not being distracted by continuing the investigation of the appellant's truck and needed to remove the truck away from the possible disruption at the roadblock. In any event, it was necessary to store the truck in a safe place while the appellant was in jail. The search of the truck was not invalid because the officers moved the truck to a garage for further investigation.

The officers would have been remiss in their duty in permitting appellant to drive the truck without a license.

In the past, this Court has upheld warrantless searches where the removal of the vehicle to the police station and subsequent search were part of a "series of events constituting one continuous happening." *Taylor v. State,* 421 S.W.2d 403 (Tex.Cr. App.1967); *Borner v. State,* 521 S.W.2d 852 (Tex.Cr.App.1975). In the present case, the search of the false compartment was the culmination of a continuous effort on the part of Officers Robinson and Oldham and later Officer Prince to ascertain the ownership of the truck. The investigation was extended over a period of time because of the delay entailed in contacting the various law enforcement departments in San Antonio, Austin and Mission while trying to track down the owner of the license plates. The officers did not stray from their goal of locating the owner during the entire length of the transaction. We held that the search was part of a continuous happening and comes under *Taylor v. State,* supra, and *Borner v. State,* supra.

In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court summarized the warrant requirement of the Fourth Amendment as follows: "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* supra, at 357, 88 S.Ct. at 514. One such exception to the warrant requirement is the long-established exception for the search of vehicle which is readily capable of being moved along the highway. *Carroll v. United States,* supra; *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Another exception is the exigent circumstances exception, *Chambers v. Maroney,* supra, 399 U.S. at 51, 90 S.Ct. 1975. This case comes under both exceptions to the warrant requirement.

In *Stoddard v. State,* 475 S.W.2d 744 (Tex.Cr.App.1972), this Court invalidated a search of an automobile following the arrest of its owner because no exigent circumstances existed which would have excused the failure to obtain a warrant to search the automobile. In *Stoddard v. State,* supra, the appellant had been arrested in his office and put in jail. After he was in custody, the police searched his car where it was parked some distance from the appellant's office. There was no indication that Stoddard's car was stolen.

Unlike *Stoddard v. State,* supra, this case does present exigent circumstances excusing the officers from obtaining a search warrant for the search of the truck that appellant had been driving. Absent any showing of bad faith on the part of Officer Prince, the Comal County Sheriff's Department could not detain the appellant in jail indefinitely without filing some charges against him. Upon his release from jail,

the appellant would either have possession of the keys to the truck when his personal effects were returned to him or the keys would be in the truck at the garage (the record was unclear as to the location of the keys). At least during business hours when the garage was open to the public, the appellant would have had access to the private garage where the truck was stored. In addition, the report from Hidalgo County that the owner of the plates on the truck was in Michigan and was not available for immediate clarification of his relationship, if any, to the truck, made it all the more pressing for the officers to proceed with the check of all the vehicle identification numbers on the truck.

Beside the exigent circumstances exception to the warrant requirement, there is also the moving vehicle exception. Although the present case does not involve the search of a car on the highway as did the landmark case of *Carroll v. United States,* supra, it does share many of the elements which led to the carving out of such an exception. As pointed out by Justice Blackmun in the recent Supreme Court case of *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), a search of an automobile is less intrusive than a search of a home, there is a lesser expectation of privacy in a motor vehicle because it is not a "residence or [a] repository of personal effects." *Cardwell v. Lewis,* supra, at 590, 94 S.Ct. at 2469. The Court also noted that people riding in automobiles do not have much capacity for escaping public scrutiny since the contents and occupants of the vehicle are largely in plain view.

In *Cardwell,* supra, the appellant was convicted for murder based upon, among other things, the matching of paint scrapings and tire tread from his car with paint and tire marks found at the scene of the crime. A warrantless search was made of the exterior of the appellant's car after the appellant's arrest and some time after the police had probable cause to believe that such a search would yield evidence of the murder.

In *Cardwell,* supra, the police took paint scrapings from the bumper of the automobile and an imprint of the tire tread. Nothing in the interior of the car was searched. Similarly in the present case, the police did not search the interior of the vehicle where the appellant would have enjoyed a greater expectation of privacy. In this case, the police only looked for the vehicle identification numbers placed on the exterior of the truck and studied the bed of the truck which was only closed on three sides. The false compartment was virtually in plain view.

As was done with the case in *Cardwell,* supra, this case could be distinguished from *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), on the ground that the search in *Coolidge,* supra, necessitated the entry upon private property for the seizure of the vehicle which was searched while in this case no such invasion of private property was necessary because the truck was seized on the public highway.

The question remains of the scope of the search. The scope of any search is limited to the circumstances which made its initiation permissible. *Haynes v. State,* 475 S.W.2d 739 (Tex.Cr.App.1972); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The search in the present case was initiated in order to find evidence which would indicate whether or not the truck was stolen. It was not unreasonable on the part of the officers to think that evidence possibly hidden in the false compartment would indicate whether or not the truck was stolen. The compartment could easily have held cans of paint used to change the color of the truck, or its previous license plates or other sets of plates to change the identity of the truck, or the compartment could have contained papers concerning the ownership of the truck. The search of the false compartment did not exceed the scope of the search initiated to determine whether or not the truck was stolen.

No error is shown. The judgment should be affirmed.