## HENRY LEWANDOWSKI V. THE STATE.

### No. 2594.  Decided February 25, 1903.

**1.—Theft—Evidence.**

On a trial for theft of a blacksmith's tongs and a hammer, the testimony offered by defendant was admissible to prove that after the prosecutor's blacksmith shop had been burned, prosecutor, in his written statement to the insurance company as to his loss by the fire, had represented that all of his tongs and hammers had been totally destroyed. The evidence was admissible as affecting the prosecutor's credibility as a witness, it being shown that defendant was unable to obtain the written statement above mentioned.

**2.—Defendant as Witness—Recalling Him.**

On a trial for theft of a pair of blacksmith tongs and hammer, where the county attorney commented on the fact that defendant, while testifying, said nothing about the tongs, it was competent and proper for the court to permit defendant to be recalled to explain his possession of the tongs.

Appeal from the County Court of Somerville.  Tried below before Hon. J. G. Adams, County Judge.

Appeal from a conviction of theft of a pair of blacksmith's tongs and a hammer; penalty, a fine of $5 and ten hours imprisonment in the county jail.

The stolen property was alleged to belong to J. S. Sanders.  J. S. Sanders, for the State, testified: "I purchased from A. Mantooth, some time in the summer of 1901, a blacksmith shop and tools; some time in the fall following said shop and tools burned. Immediately afterwards I piled up the burned tools on the spot where the shop had burned, and at the same time made a sworn statement to the Home Fire Insurance Company of Galveston, Texas, in which company said tools were insured, and in said statement listed all of my tools, stating their value before they burned, but don't remember whether I represented in said statement that all of my tools had been totally destroyed by fire. When I made said statement to said insurance company I was after said insurance company for my insurance money, but when I am testifying now as to the value of the hammer and tongs, I am after this defendant for stealing them. Soon afterwards I moved to Iredell, Bosque County, Texas. In January, 1902, I returned to Glen Rose, examined the pile of tools and discovered that some of them were missing, including the hammer and tongs in question. A few days afterwards I was in the defendant's shop and identified said hammer and tongs by the letters T. L. and a little hole on the side of the hammer and a little hole in the end of the tongs. I first learned where my said hammer and tongs were when A. Mantooth, the person from whom I bought the said tools, came to me in the courthouse yard and told me that if I would go with him to the defendant's shop he would show me my hammer and tongs. A few days afterwards the defendant was arrested and the hammer and tongs taken into the custody of the sheriff."

Tom Mantooth, for the State, testified: That he made the hammer which Sanders bought from his father, but when shown the hammer

which Sanders had identified, he said it looked very much like it, but he would not be positive that it was the same hammer.

A. Mantooth, for the State, testified: That he did not tell Sanders in the courthouse yard that if he would go to the defendant's shop he would show him his hammer and tongs, but that after Sanders had claimed the tools in his presence in the shop, he met Sanders in the courthouse yard the next day and told him that that hammer was still in the shop, meaning the hammer we had talked about the day before. "I can not identify the hammer claimed by Sanders from the other hammer showed me in court, but they look just alike to me."

Will Hopper, a nephew of the defendant, testified for the defendant: "I have been working for the defendant ever since before Sanders' shop burned. I know the hammer and tongs alleged to have been stolen and identified by Sanders. They belong to the defendant, were in defendant's shop when Sanders' shop burned, and have been there ever since till the sheriff took possession of them."

William Shields, Jr., testified for the defendant: "I was county clerk of this county for six years. Some time after Sanders' shop burned I assisted Sanders in making a statement to the Home Fire Insurance Company of Galveston, Texas. He listed his shop and all of his tools in said statement, stating their value before they were burned. Counsel for the defendant in this case assisted us in making said statement."

M. V. Price, county clerk, testified for the defendant: "Some time after Sanders' shop burned he came to my office with a written statement to the Home Fire Insurance Company regarding his loss, and had me take his affidavit to the same. I gave the statement to Sanders after he made affidavit to it."

Henry Lewandowski, the defendant, testified that after Sanders' shop burned and after Sanders went to Iredell his tools went "helter skelter" and everybody that wanted any of the tools went there and got them. None of them are there now. "I never got a hammer or tongs from Sanders' shop in my life. The hammer which Sanders has identified belongs to me. I, assisted by my brother John, who was working in the shop with me, made the hammer four or five years ago. The hammer has been in my shop ever since. I have a brother whose name is Tate Lewandowski. T. L. are the initials of his name. He worked in the shop with me some time ago and cut the letters T. L. on the hammer to represent his name. He was a partner in the shop with me at the time. He is not in the State now." When handed another hammer he said: "I found this hammer in a hole of water about twenty-five feet from the spot where Sanders' shop burned after I was arrested. It is almost like my hammer, except that it is rusty from having remained in the water and mud. It has the letters T. L. on it like my hammer. I know this is Sanders' hammer. I did not go and tell Sanders that he had accused me wrong, that I had found his hammer,

for the reason that I did not want the court officers to know my defense, as they are not my friends."

*J. Elbert Pearce,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State

DAVIDSON, PRESIDING JUDGE.—Appellant was charged with the theft of one pair of blacksmith tongs and one blacksmith hammer.

The second bill of exceptions complains of the action of the court refusing to permit witness Shields to testify that prosecuting witness Sanders, soon after his blacksmith shop was burned, in making a written statement to the insurance company in which he carried insurance on his blacksmith establishment and tools, in regard to the loss by fire, stated, in such representations to said company, that all his hammers, tongs, and all of his tools had been totally destroyed by fire. The State objected because the testimony was immaterial and the written statement was the best evidence. Whereupon witness Pierce, in order to lay the proper predicate, and show the written statement was lost, stated that he knew the statement was made to said insurance company, and after this prosecution was instituted wrote several letters to the insurance company at Galveston, attempting to get a copy of said statement. The letters were all returned. Then he wrote to a firm of attorneys at Galveston, asking them to locate the insurance company, and received the information that said company had dissolved, and were no longer in Galveston, but had moved to Dallas; that he went to Dallas in April, 1902, and sought to locate the insurance company, in order to secure the affidavit of Sanders, or a copy of it; that he examined throughout the city, by all the means afforded him, to locate said company or its president, but failed. It is not necessary to detail the means he used in his attempt to locate the company and its officers. The court thereupon refused to permit Shields to testify to said statement. Shields would have testified that he assisted Sanders in making the statement, and that Sanders in said statement and affidavit reported to said company that his shop and all of the tools therein, including hammers and tongs, had been totally destroyed by fire. Sanders had testified that he did not recollect whether or not he had made such statement, but if he had he was then seeking to secure money from the insurance company, but he was now testifying against appellant. The testimony was offered for the purpose of affecting the credibility of Sanders, and for the purpose of proving the value of the hammer and tongs, and the knowledge of the witness Sanders that said hammer and tongs had no value at the time he made such statement. We believe this testimony should have gone to the jury, and that the proper predicate was laid for the introduction of the testimony of Shields. Certainly it went to the credit of Sanders, whether or not it had any probative force as to the value of the hammer and tongs.

While the county attorney was making his opening argument to the jury, among other things, he criticised defendant while he was a witness in his own behalf, because he did not tell one word about these tongs. Counsel for defendant interrupted the county attorney, and announced to the court that he had overlooked to interrogate defendant while upon the stand in regard to the ownership and possession of the tongs, and asked the court to again allow him to put defendant on the witness stand, in order that he might explain this matter, and that if permitted to recall defendant he would explain his possession of the tongs in like manner as he had explained the possession of the hammer, and that it was the fault of counsel, and not the fault of defendant,.that he had not so explained his possession while upon the stand in the first instance, and that it was necessary to the administration of justice, as well as defendant's ground of defense, that the court permit him to again take the stand under the circumstances. The court refused upon the ground that he had already been upon the stand, and the testimony had closed, and permitted the county attorney to proceed with his argument, and to further argue to the jury that defendant had failed to explain his possession of the tongs, etc. While upon the stand appellant had testified that the hammer was his, and that it had been made in the shop by himself and his brother, and would have testified, if permitted to be recalled, to the same facts in regard to the ownership and possession of the tongs. The court should have permitted the witness to be recalled. This question was before the court in Donahoe v. State, 12 Texas Crim. App., 297. It was material and important to the defense. The Donahoe case is so nearly like this we deem it unnecessary to enter into a discussion of the matter, but simply refer to it for support of this ruling.

. The matter with reference to the application for continuance is not discussed, for the reason that the witness may be before the court upon another trial, and, if not, the application will be presented under different conditions.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*