W. C. FREY and MAMIE HELLER V. THE STATE.

No. 6500. Decided February 7, 1923.

**1.—Adultery—Sufficiency of the Evidence.**

Where, upon trial of adultery, the evidence is sufficient to support the conviction, there is no reversible error.

**2.—Same—Discretion of Court—Additional Evidence.**

The matter of introducing testimony before the close of the argument is, and of necessity must be so, entirely within the discretion of the trial judge and this court would not feel authorized to hold erroneous his action either in admitting or rejecting it, unless an abuse of such discretion was clearly apparent.

Appeal from the County Court of Reagan. Tried below before the Hon. W. W. Pittman.

Appeal from a conviction of adultery; penalty, a fine of four hundred dollars against one defendant, and one hundred dollars against the other.

The opinion states the case.

*Chas. L. Black* and *Wantland & Dickey* for appellant.

*R. G. Storey,* Assistant Attorney General for the State.

HAWKINS, JUDGE.—Appellants were jointly indicted and jointly tried for adultery. Both were convicted. Frey was fined four hundred dollars and Mrs. Heller one hundred dollars.

The sufficiency of the evidence to support the conviction is assailed. L. M. Rankin, the sheriff, testified that about the first of September, 1920 appellant Frey inquired of him if it would be unlawful for him to employ a woman for housekeeper on his ranch. The sheriff replied that he did not know. Frey then said he was going to consult a lawyer and if it was all right he was going to employ a housekeeper and take her to the ranch. He did get Mamie Heller and took her to the ranch in question. During the time they lived in the house upon the ranch no other parties lived in the house

with them. Some time in the fall of 1920 this house was destroyed by fire and they moved to a vacant house on the Thornton ranch. The sheriff was there on two occasions in November and December. The house had four rooms. Appellants were both occupying one room and a Mexican sheep herder occupied an adjoining room. The other rooms were vacant. Witness Nunn testified that on several occasions he had seen Mamie Heller at the house occupied by Frey on the ranch; that a day or two after this house burned witness was at Frey's place and both he and Mamie Heller were living in a small one-room garage that was not burned at the time the dwelling house was destroyed. Frey told witness at this time that he was going to move to the house on the Thornton ranch. After they moved this witness was at their house and appellants both occupied one room which had but one bedstead in it. A Mexican occupied one room and the rest of the building was unoccupied. Witness Petit testified that some time in October a mule had kicked Frey and that witness and Dr. Womack were at Frey's house; that on this occasion witness and the doctor slept on the floor in the same room with Frey, that Mamie Heller on this occasion did not occupy the same room. This was before Frey's ranch house burned. When the doctor and witness went to the house no one was there except the two appellants. This witness claims to have visited them several times during the fall and winter of 1920 but at no time saw any improper relations between them, but stated that the two appellants were out there during that time and that no one stayed there with them until after the first of December, when a Mr. Bacon went to work for appellant Frey. Alberto Romedo was working for Mr. Thornton. After appellants moved to the Thornton place Romedo occupied an adjoining room to the one occupied by the two appellants. This witness says that one night he peeped through a crack in the north wall of the room occupied by them; that the light was burning; that he saw Frey undress, blow out the light and get in the bed then occupied by Mamie Heller; that on this occasion there was a half moon; blankets were over all the windows in the said room and the doors closed, that there was no light in the room save that given by the moon; that he recognized both appellants; that on another occasion he peeped through a crack in the wall between his room and the room occupied by appellants and saw them in bed together; during a part of this time one Roy Bacon was working for Frey and for a while he and Frey slept upon the floor, but that later Frey occupied the bed with the woman and Bacon continued to sleep on the floor; that there was no light in the room at the time he saw appellants; that there was a door between his room and that of appellants, but it was closed and that he peeped through the crack in the wall. For appellant, Bacon testified he and Frey slept on a bed on the floor in the same room occupied by Mamie Heller, but that she at all times occupied the bed

on the bedstead, and that at no time did Frey so far as he knew, sleep in the bed with her. This witness testified that to his best recollection and belief there was no crack in the room occupied by appellants and the witness; that it was a room canvassed and papered. Dr. Womack testified substantially as did the witness Petit. Appellant Frey testified that he had secured Mamie Heller as his housekeeper about the first of September, 1920; that for about a month after she first came there was no one on the place but the two of them; that after his house burned he and Mamie Heller moved to the house on the Thornton ranch and occupied one room of this house and that the Mexican, Romedo, occupied an adjoining room; that before Bacon came to work for appellant he (Frey) slept on the floor and Mamie Heller in a bed on the bedstead in the same room; that after Bacon came he and Frey slept together on the floor and the woman continued to sleep in the bed on the bedstead. Frey denied that there had ever been any improper relations between him and Mamie Heller. He also denied that there were any cracks in the north wall of the room occupied by him and the woman, or in the wall between the rooms occupied by them and the Mexican. He said the house was a box house but did not know whether there were strips over the cracks or not. Thornton testified that after he gave appellants permission to occupy the house on his ranch he told them it would be necessary for him to move the house and wanted possession of it, but that the house had not been moved; that in the room occupied by appellants were two beds, one on the floor and one on the bedstead, that he had been to the house frequently and had never seen any improper relations between appellants; that he did not remember any cracks in the north wall or in the wall between the room occupied by the appellants and the Mexican. On being re-called for further examination he said that during the noon hour he had driven out to the house which had been occupied by appellants, and that it was canvassed and papered and that there were no cracks in the north wall or in the wall between the rooms.

Frey was thirty-eight years old, a married man with children, but not living with his wife. He was a normal man. The record affirmatively so shows. Mamie Heller was a young woman, married but living apart from her husband. Frey was introduced to her by a girl friend. We find no description of the Frey ranch house occupied by appellants for a time, but the Thornton house had two unoccupied rooms. Just why it was necessary for Frey and Mrs. Heller to occupy the same room with two vacant ones in the house is not explained. It was unusual to say the least. We are not inclined to disturb the verdict. The reason is apparent from the foregoing recital of the facts.

During the closing argument the district attorney stated there was no evidence showing that when Thornton examined the house on the

day of trial it was in the same condition as when occupied by appellants. Request was made that they be permitted to put Thornton, who was in the courtroom, back on the witness stand, and show the walls were in the same condition. The request was refused and exception reserved. The bill presents no reason why this matter was not explored when Thornton was re-examined after his visit to the house. The cogency of his testimony all depended on the house being in the same condition. If failure to make the proof was an oversight on counsel's part it is not so shown in the bill. In this respect it is entirely different from Lewandowski v. State, 44 Tex. Crim. Rep., 511, 72 S. W. Rep., 594, which is the strongest case cited by appellant. The matter of introducing testimony before the close of the argument (Art. 718, C. C. P.) is, and of necessity must be, so entirely within the discretion of the trial judge that this court would not feel authorized to hold erroneous his action either in admitting or rejecting it unless an abuse of such discretion was clearly apparent. When it is sought to have the court's action reviewed in declining to permit the case to be reopened some reason should be shown why the evidence was not developed at the proper time.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*