**Philip Allen WHITING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–86–00101–CR.**

Court of Appeals of Texas,
San Antonio.

July 29, 1988.

Rehearing Denied Sept. 1, 1988.

Paul J. Goeke, Huffman, Mayton & Goeke, San Antonio, for appellant.

Fred G. Rodriguez, Anthony Miller, Kate Feiner, Barbara Hervey, Criminal Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and REEVES, JJ.

## OPINION

CANTU, Justice.

Appeal is from a conviction for the misdemeanor offense of resisting arrest. TEX.PENAL CODE ANN. § 38.03 (Vernon 1974). A jury convicted appellant of the offense charged and the trial court assessed punishment at thirty days confinement and a fine of $200.00, probated for a year.[1]

Appellant initially challenges the sufficiency of the evidence to support his conviction. The salient facts are as follows.

On April 4, 1984, at approximately 9:40 a.m., appellant was observed speeding on IH–10 west of San Antonio in Bexar County by Texas Department of Public Safety troopers William Cawthon and James Denman. Trooper Cawthon testified that he

---

1. This appeal arises from a second jury trial. The first conviction following a jury trial was set aside by the trial court's granting of appel-lant's motion for new trial. The same punishment was ultimately assessed.

clocked appellant's speed with his radar device at eighty-miles-per-hour. Following an abbreviated two-mile pursuit, appellant's car was stopped and appellant was identified according to established departmental procedures.

Trooper Cawthon then advised appellant that he was being stopped for exceeding the posted speed limit. He was further asked if a life threatening situation existed which would excuse the speeding. Appellant replied that there was none. Cawthon then advised appellant that he would be issued a citation for speeding. Appellant became angry and belligerent and began to shout at Cawthon. Trooper Denman, sensing the intensity of the situation exited the patrol car and attempted to calm appellant while Cawthon prepared the citation.

When Cawthon finished the citation, he advised appellant as to where and when he should appear to answer the citation. He further advised appellant that he needed to sign the citation and that the signature did not constitute a plea of guilty but only a promise to appear at the time and on the date indicated on the citation. Appellant refused to sign the citation and following a second abortive attempt by Cawthon to obtain appellant's signature, Trooper Denman informed appellant that he was being placed under arrest.

Denman then ordered appellant to turn around and put his hands behind his back to effectuate the placing of handcuffs on him. As Denman attempted to place the handcuffs, appellant spun around out of Denman's grasp and Denman grabbed appellant in a bear hug grip. Appellant dropped his shoulder and threw Denman to the ground. Cawthon then grabbed appellant in another bear hug grip as Denman tackled both to the ground. All the while appellant shouted that he was not going to sign the citation and that the officers might as well shoot him. Appellant was subdued and transported to the Bexar County jail where he was charged with speeding and resisting arrest.

TEX.PENAL CODE ANN. § 38.03 provides in pertinent part:

2. Uniform Act Regulating Traffic on Highways.

(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest ... of the actor or another by using force against the peace officer or another ...

Appellant argues that his arrest was complete when he pulled his vehicle to the side of the highway and submitted to detention by approaching the arresting officers and handing over his operator's license. At this point, appellant argues, he can no longer commit the offense of resisting arrest.

TEX.REV.CIV.STAT.ANN. art. 6701d, § 147 (Vernon 1977) provides in pertinent part:

Whenever any person is arrested for any violation of this Act [2] punishable as a misdemeanor, the arrested person shall be immediately taken before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of such offense and is nearest or most accessible with reference to the place where said arrest is made, in any of the following cases:

\* \* \* \* \* \*

5. In any other event when the person arrested refuses to give his written promise to appear in court as hereinafter provided.

TEX.REV.CIV.STAT.ANN. art. 6701d, § 148 (Vernon 1977 & Vernon Supp.1988) provides, in part:

(a) Whenever a person is arrested for any violation of this Act punishable as a misdemeanor, and such person is not immediately taken before a magistrate as hereinbefore required, the arresting officer shall prepare in duplicate written notice to appear in court containing the name and address of such person, the license number of his vehicle, if any, the offense charged, and the time and place when and where such person shall ap-

pear in court. *Provided, however, that the offense of speeding* and the offense defined in Section 107E *shall be the only offenses making mandatory the issuance of a written notice to appear in court, by signing in duplicate the written notice prepared by the arresting officer;* and provided further, that it shall not be mandatory for an officer to give a written notice to appear in court to any person arrested for the offense of speeding or the offense defined in Section 107E when such person is operating a vehicle licensed in a state or country other than the State of Texas or who is a resident of a state or country other than the State of Texas, except as provided by the Nonresident Violator Compact of 1977. (Emphasis added.)

\* \* \* \* \* \*

(d) The arrested person in order to secure release as provided in this section, must give his written promise so to appear in court by signing in duplicate the written notice prepared by the arresting officer. The original of said notice shall be retained by said officer and the copy thereof delivered to the person arrested. Thereupon, said officer shall forthwith release the person arrested, from custody.

TEX.CODE CRIM.PROC.ANN. art. 15.22 (Vernon 1977) describes when an arrest has taken place:

A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant.

Article 15.22 has been interpreted to mean that an arrest occurs at the moment that a person's freedom of movement is restricted or restrained. *See, e.g., Maldonado v. State*, 528 S.W.2d 234, 237 (Tex.Crim.App. 1975); *Hardinge v. State*, 500 S.W.2d 870, 873 (Tex.Crim.App.1973).

■ The mere fact that an officer makes the statement to an accused that he is under arrest is not enough to complete the arrest. *Smith v. State*, 153 Tex.Cr.R. 230, 219 S.W.2d 454, 456 (App.1949). It is additionally required that custody and control be assumed over the party. *Wyatt v. State*, 120 Tex.Crim. 3, 47 S.W.2d 827, 829 (1932).

In 6A C.J.S. *Arrest* § 43, pp. 101–102, it is said,

It is generally held that the custody or control, the assumption of which is involved in an arrest, imports an actual restraint or detention of the person arrested, or a significant restraint of his freedom of movement by effectively preventing him from exercising his freedom to depart, or compelling him to move in accordance with the arrestor's instructions. There is no arrest in the absence of the requisite restraint of liberty.

We believe that appellant was technically under arrest when he was stopped by Troopers Cawthon and Denman. But an arrest often takes the form of a less intrusive stop or detention for administrative reasons or investigation. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Ebarb v. State*, 598 S.W.2d 842, 850 (Tex.Crim.App.1980) (on rehearing); *see also* TEX.REV.CIV.STAT.ANN. art. 6687b, § 13 (Vernon Supp.1988); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Meeks v. State*, 692 S.W.2d 504 (Tex.Crim.App.1985) (en banc).

■ The ultimate determination of the presence of a seizure (arrest) is made by considering whether in view of all the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave. This determination is made by considering both the officer's subjective perception of the person's freedom of mobility and the person's own belief concerning the ability to leave. *Gilbreath v. State*, 412 S.W.2d 60, 61 (Tex. Crim.App.1967).

In the instant case the peace officers were not authorized to maintain appellant in custody for the offense of speeding unless appellant refused to sign the citation required to be prepared by article 6701d, § 148.

From a reading of the evidence before us it is clear that the officers had no intention

to detain appellant further than to obtain his written promise to appear. It was only after appellant belligerently indicated his unwillingness to sign the citation that the officers attempted to restrain appellant's freedom to any significant degree.

■ A person is not arrested or seized under the Fourth Amendment if he is free to choose whether to enter or continue an encounter with police and elects to do so. *United States v. Brunson*, 549 F.2d 348 (5th Cir.1977), *cert. denied*, 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed.2d 107 (1977).

■ Appellant was given the choice to dictate the extent of his detention and opted to require the taking of his person into physical custody rather than secure his release upon the simple expediency of his signature. His use of force to obstruct and prevent the taking of his person into physical custody constitutes the offense of resisting arrest. *Cf. Talavera v. State*, 626 S.W.2d 618, 619 (Tex.App.—El Paso 1982, no pet.).

The evidence when viewed in the light most favorable to the prosecution is such that any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App.1986) (en banc).

Point of error number one is overruled.

Point of error two complains of the trial court's denial of appellant's plea in bar filed pursuant to TEX.CODE CRIM.PROC. ANN. art. 28.061.

Prior to trial for the instant offense, appellant filed and presented to the trial court his plea in bar pointing out that he had been charged with two offenses arising from the same transaction: speeding and resisting arrest. Evidence presented by appellant indicated that the speeding ticket had been dismissed pursuant to the Speedy Trial Act, TEX.CODE CRIM.PROC.ANN. art. 32A.02. The plea in bar was overruled by the trial court.

Although appellant's argument on the merits is persuasive, we need not address it because subsequent to the filing of appellant's brief on appeal the Texas Court of Criminal Appeals handed down the opinion in *Meshell v. State*, 739 S.W.2d 246 (Tex. Crim.App.1987) (en banc) which declared that the Speedy Trial Act and Article 28.-061 were both rendered void. Appellant's point of error has been rendered moot and is accordingly overruled on that basis. *See also Franklin v. State*, 733 S.W.2d 715, 716 (Tex.App.—Fort Worth 1987, no pet.).

Appellant's next point of error alleges that the trial court erred in refusing to permit him to recall a prosecution witness for additional cross-examination.

In seeking to recall Trooper Cawthon defense counsel stated the following to the court:

> MR. GOEKE: I want to ask—he has testified that he, my client flipped James Denman over his shoulder in a type of judo, and I want him to show me where it is in his offense report. It is not there. He has also testified that my client turned his back to him in acquiece (sic) in response to his arrest, to the statement that he was going to be under arrest. I want him to tell me where that is in his offense report. It is not there, and I want to be sure of the admissibility of that in argument. Do you agree that that is in evidence?

The record reflects that appellant's attorney was provided with a copy of Cawthon's report by the prosecutor immediately prior to cross examination by the defense. Cross examination of Cawthon was lengthy and the contents of the report were inquired into extensively.

Nevertheless, the trial court granted appellant a short recess prior to the reading of the jury charge to permit appellant time to support his request with case authority. In the meantime the witness became unavailable and the court elected to proceed with the trial rather than to delay further. Prior to final arguments the witness reappeared and appellant again sought to reopen for the stated reason. Again the trial court refused.

TEX.CODE CRIM.PROC.ANN. art. 36.-02 provides:

The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice.

■ Reopening of the case for introduction of additional evidence is in the trial court's discretion and its action is not reversible error unless it is demonstrated that the discretion has been abused. *Adams v. State,* 154 Tex.Crim. 92, 221 S.W. 2d 264 (1949), *cert. denied,* 338 U.S. 906, 70 S.Ct. 302, 94 L.Ed. 558 (1949).

Before an abuse of discretion can be shown, appellant must show that the proposed testimony would have materially changed the case in his favor. *Baker v. State,* 130 Tex.Crim. 649, 95 S.W.2d 401, 403 (1936).

Our review of the record, liberally viewed, indicates that appellant sufficiently apprised the court as to what Cawthon's testimony would have been and the offer of proof, as made, sufficiently preserved appellant's claimed error for our review. *Moosavi v. State,* 711 S.W.2d 53, 55–56 (Tex.Crim.App.1986) (en banc).

■ But even if we take the view that appellant sufficiently called to the court's attention the nature of the excluded testimony, still we are convinced that appellant was afforded every opportunity during the cross examination of Cawthon to develop the very testimony he sought to belatedly offer. Under the circumstances, we are not inclined to find abuse of discretion on the part of the trial court, particularly since appellant has never let it be known why the particular evidence sought was not developed at the proper time. *Cf. Frey v. State,* 94 Tex.Crim. 109, 249 S.W. 841 (1923). Appellant's third point of error is overruled.

■ Confronted by the trial court's refusal to permit appellant to reopen, appellant then sought to have Trooper Cawthon's offense report admitted into evidence for the limited purpose of impeachment. The State's objection was sustained.

Appellant's continuing complaint is that the description of appellant's actions in tossing Trooper Denman to the ground, as a judo maneuver, does not appear in the written offense report prepared by Cawthon. Appellant argues on appeal that he should have been permitted to impeach Cawthon with a prior inconsistent statement and cites authority supporting that proposition. *See Smith v. State,* 520 S.W. 2d 383, 386 (Tex.Crim.App.1975).

We fail to see how the offense report constitutes an inconsistent statement. If a statement simply is not there it cannot form the basis of inconsistency with later testimony. Appellant was given every opportunity to discredit Cawthon's testimony through legitimate impeachment during the trial proper. We doubt appellant could have accomplished during the case proper what he belatedly sought to do after resting and closing. Moreover, before a prior inconsistent statement may be used for impeachment, the proper predicate must be established. *See* McCORMICK & RAY, LAW OF EVIDENCE, § 692, pp. 632–633, 687–696; *see also* TEX.R.CRIM.EVID. 612(a). Appellant's fourth point of error is overruled.

■ Appellant next complains of the trial court's refusal to allow him to cross examine a witness regarding former testimony.

During direct examination Trooper Cawthon testified that, after appellant had flipped Trooper Denman to the ground, appellant stood over the prone trooper "in a crouched position" and that he (Cawthon) then tackled appellant, with both of them falling on Trooper Denman.

As noted *supra,* a prior trial resulted in the granting of a new trial and thus followed the instant trial. Appellant sought to impeach Cawthon by referring to his testimony in the initial trial. Although the testimony of the prior trial was not transcribed at the time of the second trial, appellant sought to impeach Cawthon by using his own notes and his own recollection of Cawthon's testimony from the prior trial. The trial court refused to permit impeachment without the use of a transcription from the earlier proceedings.

After the State rested and closed but before appellant closed, he sought to have the court reporter read her notes back to attempt impeachment in that manner. The trial court denied appellant's request noting that the request was untimely made. Moreover, the trial court noted that appellant had had some seven months to request and have prepared a transcription of the prior testimony. We add here that appellant never sought to avail himself of the opportunity to impeach Cawthon in the manner belatedly attempted during Cawthon's testimony during the case proper. The real question then is whether the trial court abused its discretion in refusing to permit appellant a belated opportunity to impeach a witness in a manner earlier available to him. We think the question must be answered in the negative.

Appellant's attempt to perfect a bill of exceptions without a transcription or a reading by the court reporter of her notes produced nothing because the witness was not able to remember his prior testimony without the aid of his recorded testimony. Thus we think there is nothing in the record to substantiate appellant's claim that the court erred in unduly limiting his cross examination. The point of error is overruled.

Finally, appellant contends that the trial court erred in overruling his objections to the prosecution's misrepresentation of the burden of proof during final arguments.

During the final arguments, the prosecutor argued numerous times that the jury should not hold the State to proving anything beyond the elements of the offense alleged. Each time appellant objected that the State was required to also disprove any defense raised by the evidence. With the exception of one time, each objection was overruled.

TEX.PENAL CODE ANN. § 2.03(d) provides:

> If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on

the issue requires that the defendant be acquitted.

■ Appellant was correct in his objections and the trial court should have sustained each objection. Once a defendant has produced evidence to raise a defense, the State is required to disprove that defense beyond a reasonable doubt. *Luck v. State*, 588 S.W.2d 371, 375 (Tex.Crim.App. 1979) (en banc), *cert. denied*, 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980); *Sebree v. State*, 695 S.W.2d 303, 305 (Tex. App.—Houston [1st Dist.] 1985, no pet.).

The court's charge, however, correctly instructed the jury on the issue of self defense as raised by the evidence and required the State to disprove the defense beyond a reasonable doubt before the jury was permitted to convict.

It is clear that the court erroneously rejected appellant's objections. The question we must decide is whether such action calls for reversal. An examination of the entire final arguments discloses that appellant's counsel argued without objection the issue of self defense and the burden of proof as it devolved upon the State with respect to disproving it beyond a reasonable doubt, in effect neutralizing to some extent any misinformation the court's rulings may have caused.

During opening statements on voir dire the prosecutor stated, without objection, the following: "All we have to prove are those elements in the information beyond a reasonable doubt." This was undoubtedly a true statement when made because the State was not in a position to know at that point if appellant would raise a defense.

During defense counsel's voir dire opening statement, he informed the jury that under Texas law the State was required to disprove a defense raised by the evidence beyond a reasonable doubt. When the State objected, the trial court sustained appellant's position by overruling the State's objection. The trial court thus at different times, sustained the position advanced by both parties.[3]

---

3. As part of its preliminary remarks to the venire panel the trial court made the following

remarks immediately prior to voir dire:

■ An argument which contains a statement of the law contrary to the court's charge is error. *Lincoln v. State,* 508 S.W.2d 635, 638 (Tex.Crim.App.1974). But although a statement by the prosecutor may be inaccurate, if it is not contrary to the law contained in the court's charge, a reversal need not be mandated. *Lincoln, supra.* While the prosecutor's argument was technically accurate because it addressed the court's application of the law to the facts in its paragraph 3, it was incorrect to imply that the limits on the State's burden of proof were as spelled out in paragraph 3 alone.

■ The trial court's charge, when read as a whole, and when viewed in the context of the entire record fairly and correctly instructs the jury on the issues of self defense, burden of proof and reasonable doubt. TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon 1981) spells out the duties of the trial court in instructing the jury on the applicable law. There is no contention on appeal that the applicable law was not set out in the court's instructions as required. The charge of the court clearly instructed the jury that they were to be governed by the law as given by the court and as set out in the body of the charge. We do not think that the court's erroneous rulings were calculated to mislead the jury to such degree that appellant was deprived of a correct application of the law. *See and Compare, United States v. Hutson,* 821 F.2d 1015 (5th Cir.1987); *Johnson v. State,* 604 S.W.2d 128 (Tex. Crim.App.1980). The point of error is overruled and the judgment of the trial court is affirmed.

CADENA, C.J., dissents with opinion.

At the end of the trial when you have heard all of the evidence that will be presented by the attorneys, I will then present to you specifically what the law of resisting arrest is. And that will break the elements down for you to clearly see. And all of the necessary definitions for you to arrive at a verdict will be included in that charge or instructions.

\* \* \* \* \* \*

CADENA, Chief Justice, dissenting.

Unless it is proper to ignore completely, as does the majority opinion, *Davis v. State,* 506 S.W.2d 909, 910–11 (Tex.Crim. App.1974), the conclusion is inescapable that the conviction must be reversed because the prosecutor was permitted, on several occasions and over appellant's timely and correct objections, to tell the jury that the State need only prove the elements of the offense. The prejudicial effect of such argument was increased by the fact that appellant's objection, which was overruled several times was based on the undoubtedly correct rule that it was the State's burden to disprove beyond a reasonable doubt any defense raised by the evidence. The effect of the court's rulings was to tell the jury that appellant's insistence that the State must disprove defenses was incorrect, and that the State's argument was a correct statement of the law.

It is of no moment that the court's charge, "when read as a whole, fairly and correctly instructs the jury on the issues of self-defense, burden of proof and reasonable doubt," since the court's rulings on appellant's objections was a strong indication of disapproval of appellant's contention that the State had the burden of disproving defenses. Viewing the various communications to the jury as a whole, the most charitable assessment of the situation is that the jury received conflicting theories and that the court seemingly approved the State's position. At the very least, what we have are contradictory statements concerning burden of proof, with no consistent position being taken by the court. Necessarily, the result was one tending to confuse the jury.

If we accept the contention that all is well because the court's charge was correct we are, in effect, saying that a prosecutor's

Each case has certain facts which are different than other set of facts. And I must listen very carefully along with you and I must draft the charge bringing into that charge any particular kind of legal definition or explanation that I see is fit for you to understand in arriving at a verdict.

\* \* \* \* \* \*

argument which is contrary to the charge is harmful only when the court's charge is incorrect and the prosecutor's argument is a statement of the law. Such a theory, while admittedly novel, can be accepted only with some difficulty.

The majority opinion states, "We do not think that the court's erroneous rulings were calculated to mislead the jury to such a degree that appellant was deprived of a correct application of the law." This statement is an incorrect application of the law. According to TEX.R.APP.P. 81(b)(2), if, as the majority concedes, the record reveals error, we must reverse unless we determine "beyond a reasonable doubt that the error made no contribution to the conviction ..." A belief that the error was not prejudicial is insufficient.

I would reverse the conviction and remand the case for a new trial.